799 P.2d 127

**In the Matter of Elizabeth GABRIEL, An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

No. 19385.

Supreme Court of New Mexico.

Oct. 10, 1990.

Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque, for Disciplinary Bd.

Timothy M. Padilla, Albuquerque, for respondent.

## OPINION

PER CURIAM.

This matter is before the court following disciplinary proceedings conducted pursuant to the Rules Governing Discipline, SCRA 1986, 17–101 to –316 (Repl.Pamp. 1988 & Cum.Supp.1990), wherein attorney Elizabeth Gabriel, in accordance with an agreement for discipline by consent, admitted to various violations of the Rules of Professional Conduct, SCRA 1986, 16–101 to –805 (Repl.Pamp.1988 & Cum.Supp. 1990). Pursuant to Rule 17–211(B)(1)(a), we approve and adopt the Disciplinary Board's acceptance of the conditional agreement for discipline by consent.

The charges in this matter arose out of Gabriel's admittedly inadequate record keeping and accounting procedures regarding her client trust account, which came to the attention of disciplinary counsel when one of Gabriel's clients complained that he had had difficulty obtaining settlement proceeds from her in a timely fashion.

Gabriel and Louis Garcia received a check for $6,900.00 in settlement of Garcia's workers' compensation claim on September 22, 1989, and it was endorsed and deposited into Gabriel's trust account on the same date. It was not until October 20, after some urging by Garcia, that Gabriel issued him checks for his portion of the proceeds. When Garcia attempted to negotiate the checks, he was advised by the bank that there were insufficient funds in the account to cover them. Garcia made several more trips to the bank before he finally was able to cash the checks on October 23, 1989.

When Garcia complained about his problem, disciplinary counsel subpoenaed the bank records pertaining to Gabriel's trust account for September through November 1989 pursuant to the provisions of Rule 17–306(A)(2). The records indicated that despite the immediate credit of the $6,900.00 to the account on September 22, by September 28 the balance in the account balance was $13.77 and on October 20, the date Garcia first attempted to negotiate his check, the balance was $97.27. On October 23, however, a $6,900.00 deposit was made into the account for client Jennie Chavez, bringing the balance in the account to an amount that enabled Garcia to cash his checks.

Examination of the bank records indicated other serious problems with the account. While the beginning balance in the account as of September 1, 1989, was only $2,417.17, between that date and November 30 disbursements totaling $24,953.59 were made to or on behalf of numerous clients for whom no deposits were indicated. On the other hand, substantial deposits were

made for other clients, including Jennie Chavez, during the same period but no disbursements were made to them. While the balance in the account should have been at least $21,646.63 on November 30, in fact it was only $494.27. It was obvious that Gabriel routinely was utilizing the funds of some of her clients to cover payments made to other clients.

One of the persons to whom payments were being made and for whom no deposits were recorded was Ricky Santillanes. When contacted by disciplinary counsel in the spring of 1990, Santillanes advised that he was Gabriel's client and that she had been handling a personal injury case for him since 1987. Santillanes had not received his entire portion of the monies he had been awarded in settlements reached in April 1987 ($50,000.00) and in May 1989 ($32,000.00). Gabriel was asked for an accounting of the Santillanes funds. A document entitled "Recap Settlement" and a closing statement were provided to disciplinary counsel but did not coincide with one another or with relevant bank records. It subsequently was ascertained by an accountant hired by Gabriel in an effort to rectify the problems with the trust account that she still owed Santillanes an additional $20,000.00, which she paid to him on April 26, 1990.

An attorney's duties to persons whose money is entrusted to him or her are enumerated not only in Rule 16–115 of the Rules of Professional Conduct, but also in Rule 17–204 of the Rules Governing Discipline. Rule 16–115(A) requires that such funds shall be kept in a separate account and appropriate records maintained, and Rule 17–204 describes the types of records that must be maintained. Rule 16–115(B) directs that an attorney promptly shall deliver to a client any funds the client is entitled to receive and, upon request, render a full accounting regarding such property. These rules are neither enigmatic nor difficult to implement. While appropriate record keeping of necessity involves an investment of time, there is no reason to believe that one who has attained the level of education required of a licensed attorney cannot either manage to meet these requirements or hire and train an employee to do so and provide appropriate supervision to that person.

Mismanagement of client funds is one of the most serious acts of misconduct an attorney can commit. Any person who entrusts money to an attorney has an absolute right to expect that the money will be secure with the attorney and not haphazardly dispersed to others. Furthermore, clients, and others whose money an attorney may have in possession, are entitled to a precise accounting of how each penny placed in that attorney's care has been expended. We cannot stress enough the sanctity of these obligations and will impose severe discipline on any attorney who is unwilling or unable to meet these responsibilities.

Gabriel did not contest the factual allegations or allegations that she violated Rules 16–115(A), 16–115(B), and 16–804(H). She consented to suspension from the practice of law for an indefinite period of at least two years provided that the suspension be deferred pursuant to Rule 17–206(B)(1), and to probation under certain terms and conditions.

In agreeing to accept this disposition, a hearing committee and the Disciplinary Board panel specifically noted there was no evidence nor any suggestion that Gabriel had embezzled or converted client funds to her own use. In fact, it appeared that she actually may have overpaid some clients and omitted to collect agreed-upon fees because of her deplorable record keeping methods. When the problems were brought to her attention, Gabriel took immediate remedial measures, including the opening of a new trust account and the hiring of an accountant in an effort not only to reconcile books pertaining to the old account, but also to develop accounting and bookkeeping procedures designed to preclude any recurrence of the problem. So far as can be ascertained, all persons having money in Gabriel's trust account have been reimbursed fully. In addition, Gabriel was cooperative throughout these proceedings and has acknowledged and shown great remorse for her wrongdoing. For

these reasons, we feel that the proposed resolution will provide adequate safeguards for the public and the integrity and standing of the profession.

It is therefore ordered that Elizabeth Gabriel be and hereby is suspended indefinitely from the practice of law for a minimum period of two years pursuant to SCRA 1986, 17–206(A)(3), effective immediately.

It is further ordered that imposition of said sanction is deferred and that Gabriel be placed on probation for a period of two years pursuant to SCRA 1986, 17–206(B)(1), on the following terms and conditions:

1) She will meet with attorney Roy Anuskewicz, who is hereby appointed as her probationary supervisor, at the times and places directed by Mr. Anuskewicz, and accept instruction from him regarding appropriate trust account record keeping and management procedures. She will demonstrate to the satisfaction of Mr. Anuskewicz that she understands said procedures and that her trust account is being handled in a manner that will prevent any repetition of the problems giving rise to the charges in the case;

2) She will submit to and bear the expense of four audits to her trust account during her probationary period by an auditor to be appointed by disciplinary counsel. Any report by the auditor of irregularities in the account itself or in Gabriel's record keeping procedures will be reported to the Supreme Court and will provide the basis for immediate termination of her probation and imposition of the period of suspension without further proceedings;

3) She will repay in full, and with interest of fifteen percent per annum from the date the funds should have been paid, any monies subsequently found to be owed to any person as the result of her past trust account mismanagement;

4) She will take and pass the Multistate Professional Responsibility Examination;

5) She will commit no further violations of the Rules of Professional Conduct, and;

6) She will reimburse the Disciplinary Board for all costs incurred in the investigation and prosecution of this case.

Gabriel has agreed that any failure by her to abide by any of the terms and conditions of her probation will result in the filing of a motion for order to show cause with this court pursuant to SCRA 1976, 17–206(G), and that if she is shown to have violated any of the terms of her probation, further discipline, including disbarment, could be imposed.

Full reinstatement to the practice of law will not be automatic but will occur only after proceedings conducted pursuant to SCRA 1986, 17–214(G).

The costs of this proceeding in the amount of $340.57 were paid by Gabriel on August 20, 1990.

IT IS SO ORDERED.