866 P.2d 350

In the Matter of W. Eugene HERKEN-HOFF, An Attorney Admitted to Practice Before the Courts of the State of New Mexico.

No. 21718.

Supreme Court of New Mexico.

Dec. 22, 1993.

Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque, for Disciplinary Bd.

Eugene W. Herkenhoff, pro se.

## OPINION

PER CURIAM.

This matter is before the Court for consideration of the disciplinary board's recommendation that W. Eugene Herkenhoff be suspended indefinitely from the practice of law with said suspension deferred on condition that Herkenhoff successfully complete a probationary period of at least one (1) year. We adopt the board's recommendation in its entirety.

Herkenhoff was retained in 1987 by Edwin and Bonnie Cashion (Cashions) to represent them in a dispute they were having with an auto dealership regarding a vehicle they had purchased. He ultimately filed a lawsuit on his clients' behalf. (*Cashion v. Borman et al.*, cause no. CV 89–28 before the Third Judicial District Court of New Mexico.)

The Bank of the Rio Grande (Bank) had purchased the retail installment contract from Borman and, in August 1990, attempted to intervene in cause no. CV 89–28 to assert a claim for payment on the contract, after the Cashions ceased making payments. Herkenhoff objected vehemently to the intervention, and the motion was not pursued. Thereafter, Tim Arend (Arend), president and chief executive officer of the Bank, retained the services of James A. Roggow, Esq., (Roggow) to represent the Bank's interests.

In January 1991, Roggow withdrew the motion to intervene and filed a separate action entitled *Bank of the Rio Grande, N.A. v. Edwin E. Cashion et al.* (cause no. CV 91–53 before the Third Judicial District Court of New Mexico) seeking judgment on the debt owed to the Bank. Summary judgment was entered in favor of the Bank in July 1991. In March 1992, Herkenhoff filed a motion to vacate the judgment, which was denied by the Court in May 1992. Neither the order of summary judgment nor the order denying the motion to set aside that judgment was appealed within the appropriate time limits and both became final.

Roggow then undertook to enforce and collect the judgment. On June 10, 1992, he filed a notice of deposition duces tecum in aid of judgment to be held on June 16, 1992, served a copy on Cashion, and mailed a copy to Herkenhoff. On July 13, 1992, Herkenhoff advised Roggow by letter that he had decided to "cancel" the July 16 deposition on grounds that notice was defective and "is considered nothing but harassment and abusive." Herkenhoff did not seek a protective order or otherwise attempt, within the scope of procedural rules, to stay the taking of his client's deposition. Neither he nor Cashion appeared for the deposition.

On July 16, 1992, Roggow filed a motion to compel discovery in aid of judgment and requested attorney fees and sanctions. After a telephonic hearing on this motion on August 5, 1992, the court ordered that the deposition be held within five (5) days, that Cashion bring with him the documents previously subpoenaed, and that the Cashions and Herkenhoff be jointly and severally liable for plaintiffs' attorney fees in the amount of $159.38 due to their failure to appear at the deposition. Roggow promptly gave notice that the deposition would be rescheduled for August 10, 1992.

Both Herkenhoff and Cashion appeared at the deposition, and Cashion brought with him the documents previously subpoenaed. Under questioning, Cashion, acting on the advice of Herkenhoff, refused to answer questions concerning the amount of his or his wife's salary, the amount and type of insurance he carried, ownership of or liens against any vehicles, debts owed, stocks owned by him, deeds to any property, and checking and/or savings accounts maintained by him. Also, acting on the advice of Herkenhoff, Cashion claimed that such information was confidential. Cashion refused to produce any of the documents he had brought with him, claiming that each was either privileged or a matter of public record.

Herkenhoff asserted on the record that Cashion was entitled not to show the documents to Roggow. He stated, "Your subpoena said 'produce.' He came here and produced the documents. They're available, but he's not going to show them to you, because he doesn't have to show them to you." When Roggow advised Herkenhoff and Cashion that he would be presenting the deposition to the court and seeking sanctions, Herkenhoff accused Roggow of threatening him and stated that he believed that Roggow was being extortionary. The hearing committee specifically found that Roggow did not "threaten" Herkenhoff and that the words "bring with you" or "produce" in a subpoena duces tecum are generally understood in the legal community to mean that the one so commanded will show the subpoenaed documents to the party who has had the subpoena issued.

On August 12, 1992, Roggow filed a motion to compel discovery, for sanctions, and for contempt citations. On August 20, 1992, ten days after Cashion's deposition, Herkenhoff filed a motion for protective order. Many of the issues raised by Herkenhoff in this motion previously had been raised in his motion to vacate the judgment and previously ruled upon by the court.

After a hearing on August 20, 1992, the court found that Cashion, acting on Herkenhoff's advice, willfully had disobeyed the court's August 5, 1992, order and gave judgment to the Bank against both Herkenhoff and Cashion in the amount of $887.03 for attorney fees, deposition costs, and mileage. The court also found both Herkenhoff and Cashion to be in contempt and fined them $500.00, for which they were jointly and severally liable. Certain allegations regarding Roggow were stricken from Herkenhoff's motion for protective order on grounds that they were "immaterial and scandalous." The court further ordered that the Bank could request a setting for the deposition of Cashion to be held before the court in Deming, New Mexico. The deposition was finally held on October 9, 1992, under the supervision of the court.

On the basis of the above conduct, the hearing committee and the board found that Herkenhoff violated numerous provisions of the Rules of Professional Conduct, SCRA 1986, 16–101 through 16–804 (Repl. Pamp.1991 & Cum.Supp.1992). We agree. An attorney who engages in this type of unorthodox conduct can have no conceivable purpose apart from inconveniencing a party to litigation and disrupting a legal proceeding. In this instance, Herkenhoff has committed clear violations of Rules 16–301, 16–302, 16–304(A), 16–304(C), 16–305(C), and 16–404.

In a separate but related incident, Herkenhoff committed further violations of the Rules of Professional Conduct. As noted above, Arend is president and chief executive officer of the Bank represented by Roggow since January 1991. As president and CEO, Arend clearly has managerial responsibility for the Bank and is a person protected by the prohibitions of Rule 16–402, which directs that in representing a client a lawyer may not communicate directly about the subject matter of the representation with a party the lawyer knows to be represented by another lawyer in that matter.

In November 1991, Arend requested a brief meeting with Herkenhoff to assure him that he bore no malice toward Cashion. Although Herkenhoff was aware of Roggow's representation of the Bank, he did not advise Roggow of Arend's wish to meet with him or obtain Roggow's permission to discuss the case with Arend. The proscriptions of Rule 16–402 apply equally to situations where the party represented by another attorney may initiate the contact with opposing counsel. The purpose of the rule is to protect the lay person from the possibility of an attorney utilizing his or her legal training and expertise to gain an advantage in a situation where the lay person already has acknowledged unfamiliarity with the legal complexities at hand by having retained counsel.

When Herkenhoff wrote to Arend thanking him for the meeting and requesting certain documentary evidence, Roggow responded on behalf of his client and thereafter was the only person with whom Herkenhoff communicated regarding the on-going litigation between the Cashions and the Bank. In the midst of the problems surrounding the taking

of his client's deposition, however, Herkenhoff wrote yet another letter to Arend.

In this three-page letter, Herkenhoff made numerous accusations against Arend and Roggow and demanded, among other things, that Arend immediately cease "all harassing collection actions." He also requested a meeting with Arend "without Mr. Roggow's presence" and suggested that he and his clients had a proposal for Arend's consideration. Again, there was no notice to Roggow of this communication nor any permission obtained from him. Herkenhoff did, however, send a copy of his letter accusing Arend of various acts of malice, misrepresentation, and bad faith to a national bank examiner.

Seldom have we seen a more blatant violation of Rule 16–402 or a more blatant example of the types of abuses that the rule is designed to prevent. Herkenhoff not only attempted to intimidate an opposing party but also made an obvious effort to undermine the attorney-client relationship existing between Roggow and the Bank. The letter went beyond a violation of Rule 16–402 and constituted as well a clear violation of Rule 16–404 in that it was clearly intended to create discord between Arend and his attorney and to cause problems for Arend and the Bank with the bank examiners.

By his entire course of conduct in this matter, Herkenhoff also has engaged in conduct prejudicial to the administration of justice in violation of Rule 16–804(D) and conduct reflecting adversely upon his fitness to practice law in violation of Rule 16–804(H).

An attorney who exhibits such total disregard for procedural rules and ethical standards comes perilously close to losing his privilege to engage in the practice of law as a member of the bar of this state. The disciplinary board, however, has recommended that Herkenhoff be given the opportunity to demonstrate that this may have been an isolated instance of aberrant behavior, possibly because of his long experience and previously unblemished record. Because of this recommendation, we will place Herkenhoff on carefully supervised probation with a warning that any further conduct of this nature will not be tolerated and could result in more severe sanctions.

Disciplinary counsel has urged this Court to order as a condition of probation that Herkenhoff be required to consult with a psychiatrist or psychologist and follow any treatment program indicated as necessary. While we have in the past imposed such conditions in disciplinary proceedings and have the authority to do so, we note in this instance that the same recommendation was made by counsel to both the hearing committee and the disciplinary board panel and that both declined to incorporate such a recommendation in their decisions. The disciplinary board panel, although noting that Herkenhoff had exhibited "an apparent inability to focus on, discuss, or comprehend the central issues of law and fact involved in this disciplinary action," specifically rejected the suggestion that Herkenhoff be required to seek psychiatric help, if needed, as a condition of probation. In light of the board's reluctance to impose such a condition, we decline to do so as well. Should further problems occur, however, we could reconsider the request at the appropriate time.

THEREFORE, IT IS ORDERED that W. Eugene Herkenhoff be and he hereby is suspended indefinitely from the practice of law for a period not to exceed two (2) years pursuant to SCRA 1986, 17–206(A)(3) effective this date.

IT IS FURTHER ORDERED that the imposition of said sanction be deferred and that Herkenhoff be placed on probation for a minimum period of at least twelve (12) months pursuant to SCRA 1986, 17–206(B)(1) on the following terms and conditions:

(1) That he be supervised in his practice of law by Douglas R. Driggers, Esq., who hereby is appointed as an arm of this Court to serve as Herkenhoff's probationary supervisor during the term of Herkenhoff's probation and to undertake the following responsibilities in his capacity as supervisor:

(a) To meet with Herkenhoff on a weekly basis for at least two (2) months and thereafter as necessary and on a schedule to be determined by Driggers;

(b) To see that Herkenhoff takes no action nor files any pleading absent his approval.

All pleadings and any written communication with any court filed or sent by Herkenhoff must bear Driggers' signature on an approval line. Said signature will be evidence only of Driggers' having read the pleading or communication and shall in no way constitute an endorsement of the contents of the pleading or communication or a signing of a pleading, motion, or other paper pursuant to SCRA 1986, 1–011. After two (2) months of supervision, Driggers shall have the discretion to determine the extent to which Herkenhoff may sign documents or take actions without first obtaining his approval and signature;

(c) To monitor Herkenhoff's compliance with the other terms of his probation; and

(d) To report to disciplinary counsel any failure by Herkenhoff to comply with the terms of probation or to cooperate with them.

(2) That he attend fifteen (15) hours of Continuing Legal Education in the areas of civil and appellate procedure and trial practice, at least one course of which addresses Rule 11 of the Rules of Civil Procedure;

(3) That he attend a continuing legal education or equivalent course dealing with negotiation skills and/or managing frustration;

(4) That he take and pass the Multistate Professional Responsibility Examination; and

(5) That he commit no violation of the Rules of Professional Conduct.

Any failure by Herkenhoff to abide by any of the terms and conditions of his probation will be brought to the attention of this Court by disciplinary counsel pursuant to SCRA 1986, 17–206(G). If he is shown to have violated any of the terms and conditions, further discipline could be imposed.

With the approval and concurrence of his supervisor and after a minimum probationary period of twelve (12) months, Herkenhoff may apply for full reinstatement pursuant to SCRA 1986, 17–214(G). Costs of this proceeding in the amount of $2,128.17 are assessed against Herkenhoff and must be paid to the disciplinary board on or before January 1, 1994. Any amounts not paid as of that date shall bear interest in the amount of fifteen percent (15%) per annum until fully paid.

IT IS SO ORDERED.