927 P.2d 1042

**In the Matter of Santiago R. "Jaime" CHAVEZ, an Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

**No. 23890.**

Supreme Court of New Mexico.

Nov. 20, 1996.

Christine E. Long, Deputy Disciplinary Counsel, Albuquerque, for Disciplinary Board.

Garcia Law Offices, Narciso Garcia, Jr., Albuquerque, for Respondent.

*OPINION*

PER CURIAM.

This matter came before the Court following disciplinary proceedings conducted pursuant to the Rules Governing Discipline, Rules 17–101 to 17–316 NMRA 1996, wherein the disciplinary board recommended Santiago R. "Jaime" Chavez be disbarred from the practice of law. We decline to follow the board's recommendation and hereby indefinitely suspend respondent from the practice of law pursuant to Rule 17–206(A)(3) NMRA 1996.

In April 1993, respondent represented a client in a transaction regarding the sale of a restaurant property in Raton, New Mexico. Respondent drafted a "Business Sale Agreement" regarding the restaurant property, which was executed by respondent as attorney-in-fact for his client (seller) and Guy Messina and John Downs (buyers). Buyers provided respondent with three checks: a cashier's check for $20,000.00 and two personal checks totaling $4,800.00.

The day after providing respondent with the checks, buyers retained the services of an attorney, who informed respondent that approval was not given to the sale documents and requested return of the checks; however, despite the request, respondent deposited the $20,000.00 cashier's check in his trust account on or about May 6, 1993. He also attempted to deposit the two personal checks from buyers, but the checks were non-negotiable and returned due to a stop payment.

Buyers filed a civil complaint in July 1993, the main thrust of which was a breach of contract claim and a fraud claim and requested return of the $20,000.00 among other requests for relief. Buyers' attorney also filed a disciplinary complaint against respondent.

■ Several times during the course of both the civil action and the disciplinary matter, respondent made serious misrepresentations regarding the status of the $20,000.00. In the civil matter respondent misinformed the district court on February 24, 1994, that the $20,000.00 "remain[s] in my trust account

for determination as to where they (sic) go." Respondent made this assertion despite his knowledge that the $20,000.00 had been removed from his trust account and utilized by him more than nine months earlier in May 1993.

In his May 1995 response to the disciplinary complaint, respondent made another misrepresentation about the $20,000.00 when he stated in pertinent part that "the monies were kept in my trust account because it was clear that Downs was demanding their return and creating a controversy." Based in part upon this response, deputy disciplinary counsel met with respondent in May 1995 when respondent misinformed deputy disciplinary counsel that he had deposited the $20,000.00 check into his trust account at Centinel Bank of Taos, where the funds remained until they were deposited in the court fund in September 1994. Respondent then compounded this lie in a letter wherein he informed deputy disciplinary counsel that the bank verified that a deposit of $20,000.00 was made into his trust account and that the account maintained a balance in excess of $20,000.00 until the account was closed in September 1994. Finally, respondent made his most serious misrepresentation when, in July 1995, he submitted forged bank statements to the office of disciplinary counsel showing that the $20,000.00 had remained in his trust account. A representative of the bank testified that the bank's statement did not correspond with respondent's purported bank statements in that there was a "difference of $20,000" between them.

Respondent's client in the underlying purchase and sale transaction asserted at the hearing in this matter that the disputed money was, in fact, the client's money and respondent had legally borrowed the $20,000.00. Because the hearing committee of the disciplinary board entered this assertion as one of its findings of fact, respondent was not found to have converted funds. By virtue of this "loan," however, respondent was found to have violated Rule 16–108 of the Rules of Professional Conduct. No evidence was presented that this business transaction between a lawyer and his client was in writing, that the client consented in writing, or

that the client was provided an opportunity to seek independent counsel. Such undocumented "loans" as we have in this case give rise to questions of propriety that can easily be resolved if the attorney follows the simple directives expressed in Rule 16–108.

This rule violation pales in comparison, however, to respondent's blatant lies not only to the district court but also to disciplinary counsel. This Court has stated:

[W]henever an attorney is found to have engaged in intentional conduct involving dishonesty, deceit, or misrepresentation, there is a strong indication that that person is unfit for membership in the Bar of the State. A lawyer's license to practice is a representation that the holder is one who can be trusted to act with honesty and integrity.

*In re Ayala,* 102 N.M. 214, 216, 693 P.2d 580, 582 (1985). In this instance, respondent breached the trust represented by his license. He did not act with honesty and integrity. Specifically, his conduct violated Rule 16–115(C) by failing to hold disputed funds until resolution, Rule 16–401 by knowingly making a false statement to a third person, Rule 16–801(A) by knowingly making a false statement of material fact in connection with a disciplinary matter, Rule 16–804(C) by engaging in conduct involving fraud, dishonesty, deceit, and misrepresentation, and Rules 16–804(A), (D), and (H) by knowingly acting in such a manner that his fitness to practice and the judicial process were affected.

Respondent also violated Rule 16–402 by contacting a party represented by counsel. Although this contact was initiated by the opposing party, respondent should have declined to discuss the case until he verified with the opposing party's attorney that the party was no longer represented. *See In re Herkenhoff,* 116 N.M. 622, 624, 866 P.2d 350, 352 (1993) (purpose of rule is to protect lay person from possibility of attorney using legal training and expertise to gain advantage where lay person has acknowledged unfamiliarity with legal complexities by having retained counsel).

Respondent also failed to properly maintain his trust account records to an egregious

degree. As in *In re Turpen*, 119 N.M. 227, 889 P.2d 835 (1995), respondent violated most all of the trust account record keeping requirements delineated in Rule 17–204. As trust account violations seem to be increasing, and in the hope of some preventative benefit, respondent's trust account deficiencies are delineated here to outline the types of concerns the Court has regarding trust accounts.

Respondent failed to segregate his client's funds from his own funds as evinced by his maintaining in the trust account at various times fees owed to him and general monies for himself; by his commingling funds; by leaving his fees in the trust account to cover costs for other clients and/or for bank charges; and by his writing checks from his trust account to himself and to "cash."

Respondent failed to maintain proper records concerning his trust account as evinced by his admission that his trust account records were in such disarray that he was forced to reconstruct the trust account records for the last four years.

Respondent's records demonstrated that he made disbursements to or transfers for clients when no money was available in that client's trust account until after the disbursement or transfer. He posted "opening balance" amounts for clients as money due from the client to the trust account. He incurred service and/or bank charges on his trust account that were allowed to remain unfunded for extended periods of time. He allowed his trust account to fall into an overdraft position. He failed to perform quarterly reconciliations of his trust account checkbook balance, bank statement balance, and client trust ledger sheet balances. He failed to produce individual client ledgers.

All of these actions and inactions were in violation of the Rules of Professional Conduct. Respondent's failure to properly maintain his trust account resulted in violations of Rule 16–115(A) by failing to follow the dictates of Rule 17–204; Rule 16–804(D) by engaging in conduct prejudicial to the administration of justice; and Rule 16–804(H) by engaging in conduct that reflects adversely on his fitness to practice law.

This Court has repeatedly stated that Rules 16–115 and 17–204 are not difficult and that attorneys are expected to comply with these rules or risk losing the privilege to practice law. *See, e.g., In re Gabriel*, 110 N.M. 691, 799 P.2d 127 (1990); *In re Turpen*, 119 N.M. 227, 889 P.2d 835 (1995). When dealing with client monies, attorneys must maintain the strictest standards so there can be no question that the clients are protected. By failing to follow the Rules of Professional Conduct in this regard, attorneys call into question one of the basic foundations of the practice of law: that an attorney can be trusted to act with integrity and competence regarding their clients' monies. For this reason, a showing of conversion of client funds need not be made in order for a serious trust account violation to occur. The proper maintenance of one's trust account gives the public some security that attorneys warrant the trust placed in them.

Respondent violated the public's trust by not only failing to maintain his trust account properly, but also by his willingness to make misrepresentations whenever he deemed them necessary. Such conduct cannot be tolerated. In order to insure that the public is protected, an attorney can employ several options. For example, one can hire accountants to monitor trust accounts as a way to educate careless practitioners or use other lawyers to monitor case files and work done by attorneys who may be dilatory in their work and at the same time protect the public. It is impossible, however, to protect against the type of behavior found in this case by using accountants or attorneys as mentors or monitors. Under the circumstances presented to us today, injury or damage could occur before dishonest or fraudulent conduct is discovered. No excuse exists for dishonest or deceitful practice nor does there exist an effective preventative for the potential harm that may be caused; accordingly, respondent cannot be allowed to continue to practice law. While we are disinclined to disbar respondent due to the precedent of New Mexico law in similar matters, he will have a most stringent burden to meet should he petition this Court for reinstatement.

NOW, THEREFORE, IT IS ORDERED that Santiago R. "Jaime" Chavez is hereby suspended indefinitely from the practice of law pursuant to Rule 17–206(A)(3) NMRA 1996, effective October 2, 1996;

IT IS FURTHER ORDERED that he shall be eligible to apply for reinstatement in accordance with Rule 17–214(B)(2) NMRA 1996 on or after October 2, 1997;

IT IS FURTHER ORDERED that prior to the filing of any petition for reinstatement, respondent shall demonstrate satisfaction of the following conditions:

(1) He shall pay all costs of the investigation and prosecution of this action in the amount of $10,398.22 on or before October 2, 1997, and any amount unpaid thereafter shall be assessed fifteen percent (15%) interest per annum, and said costs shall be reduced to a transcript of judgment;

(2) He shall take and successfully complete the Multistate Professional Responsibility Examination;

(3) He shall observe all Rules of Professional Conduct and Rules Governing Discipline during the period of suspension;

(4) He shall be evaluated by a licensed psychologist or psychiatrist selected by disciplinary counsel and shall submit the statement of the licensed psychiatrist or psychologist that he is psychologically capable of resuming the practice of law, with respondent to pay the cost of the examination or evaluation required to provide such a statement;

(5) He shall complete a course pertaining to trust account procedures;

(6) He shall, at such time that he is reinstated to the practice of law, employ the services of an independent certified public accountant, approved by disciplinary counsel and at his own expense, to determine whether his trust account procedures are in compliance with the applicable rules adopted by this Court;

(7) He shall comply with the recommendations of the certified public accountant concerning his trust account procedures and provide verification of such compliance to the office of disciplinary counsel upon request; and

(8) He shall retain the services of an independent certified public accountant, approved by disciplinary counsel and at his own expense, to review his trust account quarterly for a period not less than two years after the date of reinstatement. The independent certified public accountant shall determine whether respondent is in compliance with the applicable rules adopted by this Court and report all discrepancies, if any, to the disciplinary board for such action as it deems just and appropriate under the circumstances.

IT IS SO ORDERED.