931 P.2d 1382 (1997)
122 N.M. 766
1997-NMSC-7
In the Matter of W. Eugene HERKENHOFF, An Attorney Disbarred from Practice Before the Courts of the State of New Mexico.
No. 21718.
Supreme Court of New Mexico.
January 27, 1997.
Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque.
W. Eugene Herkenhoff, Silver City, Pro Se.

DISCIPLINARY PROCEEDING

OPINION
PER CURIAM.
This matter came before the Court for contempt proceedings pursuant to the provisions *1383 of NMSA 1978, Section 34-1-2 and Rule 17-206(G) NMRA 1996 of the Rules Governing Discipline. W. Eugene Herkenhoff was ordered to appear before this Court to explain why he should not be sanctioned for the two findings of criminal contempt entered against him on November 14, 1996.
On December 22, 1993, we suspended respondent from the practice of law for violations of several of the Rules of Professional Conduct but deferred the suspension and placed him on supervised probation for a period of twelve months. In re Herkenhoff, 116 N.M. 622, 866 P.2d 350 (1993). When it became apparent the respondent had no intention of cooperating with his supervisor, his probation was revoked and he was suspended May 18, 1994.
In the order of suspension, respondent was directed to comply with Rule 17-212, which requires an attorney who has resigned from practice or who has been suspended or disbarred to notify in writing all clients, opposing counsel, and courts and administrative agencies before which he or she has cases pending of the effective date of his or her resignation, suspension, or disbarment. Additionally, within ten days of the effective date, the attorney must file with this Court an affidavit confirming that he or she has complied fully with Rule 17-212 and attach thereto copies of the letters sent. Respondent failed to do this.
Further proceedings were held in an effort to compel respondent to comply with Rule 17-212 and, when these efforts were met with little cooperation from respondent, he was disbarred on January 9, 1995, effective retroactively to January 4, 1995, and fined $1540. In re Herkenhoff, 119 N.M. 232, 889 P.2d 840 (1995).[1]
On August 28, 1996, chief disciplinary counsel brought to this Court's attention by way of a verified motion for order to show cause certain information which indicated that respondent was continuing to hold himself out as an attorney and engage in the practice of law despite his disbarment.
In particular, respondent was representing Jose P. Lopez in a dispute Mr. Lopez was having with the Secretary of the Army before the Equal Employment Opportunity Commission (EEOC) in Washington, D.C. While we do not quarrel with federal regulations that permit non-lawyers to represent claimants in EEOC matters, a March 25, 1996, letter from respondent to EEOC personnel was written on his attorney letterhead stationary (with the word "RETIRED" typed below the words "W. Eugene Herkenhoff, Attorney at Law."). Respondent clearly was holding himself out as a duly licensed attorney who had simply taken retirement. When disciplinary counsel wrote to the recipient of the letter to clarify respondent's status as a disbarred attorney, respondent reacted angrily and wrote another letter (on his "RETIRED" attorney letterhead) to the EEOC recipient claiming that disciplinary counsel was harassing him and Mr. Lopez and asking that she be sanctioned under 18 U.S.C. Section 1505.
Additionally, respondent involved himself in the legal affairs of a former client, whose case was pending before the United States District Court for the District of New Mexico. The client was represented in the case by John R. Polk, Esq., although she had been represented in the same matter by respondent prior to his disbarment.
In early July 1996, Polk communicated to his client that the plaintiff would drop its claim against her if she, in turn, would drop her counterclaim for attorney fees. In response to this offer, the client (with whom Polk had previously enjoyed an amicable relationship) sent Polk a highly critical letter questioning the amount of his hourly fee and actions taken (or not taken) by him and directing him to file certain specific but ill-advised pleadings in the case. As the client was not legally sophisticated and was not *1384 conversant with the legal terms contained in her letter, it appeared to Polk that the letter had been authored by respondent.
In a subsequent phone conversation with Polk, the client was cordial and made no reference to the legal concepts she had purportedly discussed in her letter. After an explanation by Polk of the various options available to her, the client agreed to the terms of the proposed settlement and promised to send a written authorization that day. Rather than the promised authorization, however, Polk received another letter from his client refusing to settle the case, requesting a refund of fees already paid, and asking that he not contact her by phone. This letter also appeared to have been written by respondent, although signed by the client.
In response, Polk moved the court for permission to withdraw on grounds that respondent's interference in the case had so seriously compromised his ability to communicate with his client that he was no longer able to represent her. Polk then received two more lettersone from his client and one from respondent. In her letter, again apparently produced by respondent, the client went on at some length about how respondent was not actually disbarred but was simply the subject of "an unconstitutional Bill of Attainder" illegally obtained by disciplinary counsel and was actually a retired attorney who was willing to give her advice and counsel when she requested it and charge her nothing for his time. Respondent's letter threatened Polk with legal action unless Polk took specified steps in the client's case, many of which were prohibited by the revised federal procedural rules.
United States Magistrate Lorenzo F. Garcia held a scheduling conference at which time Polk's motion to withdraw was considered. Judge Garcia advised the client that respondent was indeed disbarred and could not advise her or represent her in the case. In an affidavit presented to this Court, Judge Garcia stated that in his opinion, respondent's "secret participation and legal assistance to [the client] interfered with the attorney-client relationship existing between [the client] and her attorney, Mr. Polk, and further interfered with the parties' settlement discussions. This, in turn, needlessly contributed to the increased costs of litigation and court, counsel, and litigants' time."
Based upon these documented allegations in the verified motion for order to show cause, this Court issued an order to show cause directing respondent to respond to the motion on or before September 17, 1996, and to appear before the Court on September 18, 1996, to show cause why he should not be held in contempt of the Court's order of disbarment. Copies of both the motion and the order were served upon respondent by the clerk of this Court by certified mail at his address of record with the Court. The hearing date was subsequently continued by the Court until October 23, 1996, and respondent received notice of the rescheduled hearing.
Respondent filed no response to the motion for order to show cause denying the allegations. He did not appear at the October 23 hearing nor did he file any request for a continuance.[2] The allegations in the motion were deemed admitted. Respondent was found to be in direct criminal contempt of this Court not only for his misrepresentation of his status as a "retired" attorney and his continued practice of law in the face of our January 9, 1995, order of disbarment but also for his failure to appear before the Court on October 23 as ordered.
The record in this case fully supports the finding of direct contempt. The documentation attached to the unrefuted motion shows that respondent was holding himself out as a lawyer to EEOC personnel and was engaging in the practice of law by providing Polk's client with legal advice and assistance. The court file also shows that *1385 respondent received notice of the October 23 hearing and inexplicably failed to appear. Direct contempt may be established where the court's record shows violations of court rules. In re Avallone, 91 N.M. 777, 581 P.2d 870 (1978). It may also be established where the record shows clear violations of a court's orders.
Where criminal contempt is directbut not flagrantthe contemnor must be given prior warning, an opportunity to explain the conduct at issue, and a hearing on the matter before sanctions are imposed. In re Klecan, 93 N.M. 637, 603 P.2d 1094 (1979). There must be proof beyond a reasonable doubt of the conduct constituting criminal contempt. State ex rel. Bliss v. Greenwood, 63 N.M. 156, 315 P.2d 223 (1957). If the punishment to be imposed is imprisonment for less than six months or a fine of less than $1000, however, counsel need not be appointed and no jury trial is required. State v. Case, 100 N.M. 173, 667 P.2d 978 (Ct.App. 1983) (no right to counsel where imprisonment will not exceed six months); Seven Rivers Farm, Inc. v. Reynolds, 84 N.M. 789, 508 P.2d 1276 (1973) (no jury trial right where sole punishment is fine of $1000 or less).
In this instance, respondent was adequately warned by the order of disbarment. A hearing was scheduled whereby he was given the opportunity to explain his conduct. The record provides proof beyond a reasonable doubt that he failed to appear or respond and that he held himself out as a lawyer and engaged in the practice of law after the order of disbarment was entered.
On November 14, 1996, we entered the order finding respondent in direct criminal contempt for his violations of the disbarment order and his failure to appear on October 23 and ordered him to appear before the Court on December 4, 1996, to present any facts that would justify or mitigate either act of contempt.
At the December 4 hearing, respondent appeared to believe that since he had made the decision to retire prior to the entry of our order of disbarment, the disbarment order was of no effect. He claimed that he had notified his clients of his prior suspension, but the Court file is devoid of any indication that respondent complied with the requirements of Rule 17-212. Respondent also advised the Court that because people kept requesting legal advice and assistance from him, he felt obligated to provide services to them at no cost, even though he was retired. He stated that he failed to attend the October 23 hearing because of a prior commitment to be at Lake Powell with friends.
An attorney does not defeat the disciplinary jurisdiction of the Court by simply deciding to retire, particularly where he is under an order of deferred suspension. The Court's disbarment order of January 9, 1995, is a valid order entered after proceedings conducted pursuant to the Rules Governing Discipline. Respondent violated that order and has shown no reason why sanctions should not be imposed against him. An attorney who has been suspended or disbarred may not continue to provide legal services to members of the public, with or without remuneration.[3] Additionally, a cruise on Lake Powell is not the sort of emergency that excuses an attorney's non-appearance at a court proceeding of which he has received notice. Even if an attorney has a conflicting court engagement or other legitimate excuse, he is expected to advise the court of the conflict by filing the appropriate pleading requesting a continuance well in advance of the scheduled hearing.
NOW, THEREFORE, IT IS ORDERED that W. Eugene Herkenhoff is hereby sentenced to five (5) months of incarceration for his contumacious conduct; and
IT IS FURTHER ORDERED that the entire period of incarceration be and hereby is suspended under the following terms and conditions:

*1386 (1) Respondent shall abide by all of the terms and conditions of the amended disbarment order issued on January 9, 1995, including the payment of the $1540 fine, with accrued interest, to this Court and the payment of $78.51 in assessed costs, with accrued interest, to the Disciplinary Board;
(2) Respondent shall adhere to and comply with the requirements of Rule 17-212 NMSA 1996 on or before December 16, 1996; and
(3) Respondent shall cease from using and destroy all stationary that indicates he is a retired attorney.
IT IS FURTHER ORDERED that should any of the terms and conditions not be followed, this Court shall lift the suspension of the period of incarceration and issue a bench warrant for respondent's immediate arrest and confinement.
IT IS FURTHER ORDERED that this opinion be published in the State Bar of New Mexico State Bar Bulletin and the New Mexico Reports.
IT IS SO ORDERED.
MINZNER, J., not participating.
NOTES
[1] We note that there is a typographical error at 119 N.M. at 234, 889 P.2d at 842. The opinion states that respondent was disbarred effective January 4, 1994. He was disbarred effective January 4, 1995.
[2] Respondent wrote to the Chief Justice advising him that he would not be present on October 23 due to a previous commitment. The letter was not filed with the clerk nor was a copy sent to disciplinary counsel. The letter is not a part of the record of this case. Informal ex parte communications with the Court are not considered responsive pleadings.
[3] See discussion of reasons why disbarred attorneys are not permitted to give legal advice to members of the public in In re Schmidt, 121 N.M. 640, 916 P.2d 840 (1996), also decided today.