920 P.2d 517

**In the Matter of H. Sam ARCHULETA, An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

No. 23620.

Supreme Court of New Mexico.

July 15, 1996.

Christine E. Long, Deputy Disciplinary Counsel, Albuquerque, for Disciplinary Board.

Ronald L. Valencia, Albuquerque, for Respondent.

## OPINION

PER CURIAM.

This matter came before the Court for imposition of discipline on H. Sam Archuleta. For the reasons set forth below, we adopt the recommendation of the disciplinary board that Archuleta be suspended from the practice of law for one year for violations of the Rules of Professional Conduct, SCRA 1986, 16–101 to 16–805 (1995 Repl.Pamp.), and that he meet specific conditions before seeking reinstatement to the practice of law.

Archuleta, who is a Certified Public Accountant as well as a licensed attorney, had prepared Frances and George Wood's taxes for several years before Mrs. Wood sought his help as an attorney. Although respondent did not practice in the area of criminal law, due to their prior relationship Mrs. Wood sought his counsel when she was charged with eighty-one (81) counts of issuing worthless checks between 1988 and March 1990. When Mrs. Wood first met with him regarding her criminal case in March 1990, he suggested that she and her husband file for bankruptcy to protect their assets from possible court-ordered restitution in the criminal matter. Although Archuleta was also essentially unfamiliar with the law of bankruptcy, he filed a Chapter 7 bankruptcy for Mr. and Mrs. Wood on April 17, 1990.

■ Archuleta ran afoul of the Rules of Professional Conduct, SCRA 1986, 16–101 to 16–805 (1995 Repl.Pamp.), in several different ways during his representation in the Wood's bankruptcy. Just prior to filing the Wood's bankruptcy petition Archuleta received $3,000.71 from Mrs. Wood's sister, Lucy Garcia, as payment for attorney's fees. He failed to report these paid fees to the bankruptcy court, although he informed the hearing committee in the disciplinary matter that he knew he needed to do so. He further testified that he intentionally did not report the receipt of the $3,000.71, thereby making a knowing and purposeful false statement of material fact to the bankruptcy court when he filed the Woods' bankruptcy schedules. This conduct violated Rules 16–303 and 16–804(C).

■ Next, Archuleta was still owed money by Mr. and Mrs. Wood at the time of the bankruptcy filing and, therefore, was a creditor of the Woods. He did not report that he was a creditor of the Woods either to the bankruptcy court or to the bankruptcy trustee. By intentionally not listing the pre-petition debt owed to him by Mr. and Mrs. Wood exclusively for his benefit and clearly to the detriment of the other creditors who would have been in the same position as himself, Archuleta violated Rules 16–303 and 16–804(C). Archuleta also violated Rule 16–107(B) by representing a client in a bankruptcy when he was owed money by that client. This Court agrees with the bankruptcy expert at the hearing below that Archuleta either should have forgiven the monies owed to him by Mr. and Mrs. Wood before agreeing to represent their interests in the bankruptcy (so that he would not be representing a client against his own pecuniary interests) or, at the very least, should have listed himself as a creditor in order that his

conflict was apparent to both his clients and the bankruptcy court. His representation of a client in bankruptcy who owed him money was an impermissible conflict of interest.

■ Archuleta received an additional $6,000.00 just after the filing of the bankruptcy petition. Lucy Garcia, Mrs. Wood's sister, had agreed to purchase Mrs. Wood's one-half interest in a piece of real property belonging to both herself and Mrs. Wood, in an effort to reduce her sister's ever increasing attorney's fees. Archuleta knew the funds were proceeds from the sale of Mrs. Wood's one-half interest in the property. He also knew that the property was property of the bankruptcy estate and, therefore, that proceeds from the sale of the property were also an asset of the estate. Despite this knowledge, Archuleta failed to report the receipt of this money to the bankruptcy trustee and/or the bankruptcy court and simply deposited it into his operating account.

The only person to benefit from Archuleta's failure to report the receipt of the $6,000.00 to the bankruptcy court and/or the trustee was Archuleta himself. Had he properly reported the $6,000.00, the money would have been made available by the trustee for payment to creditors. By keeping the money, he sought to benefit only himself to the detriment of other creditors and his client. His conduct demonstrated a complete disregard of not only his duty to his client but also of his duty to the profession and violated Rules 16–303 and 16–804(C). An attorney so willing to forego his professionalism for personal gain demonstrates precisely why our Rules of Professional Conduct must be strictly enforced.

■ At the time Archuleta deposited the $6,000.00 into his operating account, he was not owed $6,000.00 by Mr. and Mrs. Wood. When an attorney receives funds from a client for future attorney's fees, those funds are still considered property of the client until actually earned by the attorney and should be placed in the attorney's trust account. Archuleta's immediate placement of the monies into his operating account violated Rule 16–115(A).

■ An attorney must take extra care with client funds paid for future fees, as failure to do so can result in two separate violations. First, if the attorney immediately puts the money to his or her own use, he or she is converting client funds. The money must remain in the trust account until earned, so that it is available to be returned to the client if unearned and also to ensure that the attorney has no motivation to overwork a case to earn such money. Second, if the attorney leaves funds earned in his or her trust account, he or she is commingling the attorney's money with clients' money. Attorneys must timely and carefully follow the Rules of Professional Conduct to avoid what might seem to be innocent trust account violations.

> [H]onest utilization of one's trust account is not enough. While conversion of trust funds will surely result in the most severe discipline, *see, e.g., In re Rawson,* 113 N.M. 758, 833 P.2d 235 (1992), commingling funds and failing to maintain the proper records also place a lawyer's license at risk.

*In re Turpen,* 119 N.M. 227, 228, 889 P.2d 835, 836 (1995).

■ Mrs. Wood provided cleaning services to Archuleta from 1990 to 1993 in exchange for credit to her account for legal and accounting fees owed. Several years of the Woods' tax returns prepared by Archuleta, however, do not reflect the income Mrs. Wood received from cleaning his office. When signing the Woods' tax returns as a tax preparer, Archuleta attested that "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge." By signing this attestation knowing that Mrs. Wood's income was not reported, he made a knowing misrepresentation to the Internal Revenue Service.

■ Despite the fact that Archuleta was acting in his capacity as CPA rather than attorney when preparing the Woods' tax returns, he still violated Rules 16–401 and 16–

804(C). An attorney need not be acting in his capacity as an attorney to violate the Rules of Professional Conduct. Rule 17–205 of the Rules Governing Discipline states in pertinent part:

> Acts or omissions by an attorney ... which violate the Rules of Professional Conduct ... shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship.

The professionalism required of an attorney does not cease when he or she is no longer engaged in an activity which can only be accomplished by a licensed attorney. When an attorney engages in conduct which is impermissible in another forum, such as making misrepresentations to the Internal Revenue Service, this unethical behavior directly reflects on his or her ability to practice law.

■ Finally, Archuleta failed to produce the "required records" for his trust account which are to be maintained for five (5) years pursuant to Rule 17–204. He informed the hearing committee in this matter that his "required records" were either lost or destroyed. This Court has stated repeatedly that an attorney has an obligation to properly maintain his or her trust account records pursuant to Rule 17–204 and that failure to do so may imperil his or her right to practice law.

> These rules [16–115 and 17–204] are neither enigmatic nor difficult to implement. While appropriate record keeping of necessity involves an investment of time, there is no reason to believe that one who has attained the level of education required of a licensed attorney cannot either manage to meet these requirements or hire and train an employee to do so and provide appropriate supervision to that person.

*In re Gabriel,* 110 N.M. 691, 692, 799 P.2d 127, 128 (1990).

■ Trust account violations are perhaps the most common serious violation presented to this Court. There is no excuse for an attorney to fail to properly maintain his or her trust account given the ample New Mexico authority disciplining attorneys on this basis. Until attorneys follow the clear record-keeping requirements of Rule 17–204, this Court will have no choice but to continue to protect the public by removing the offending attorneys from the practice of law.

IT IS THEREFORE ORDERED that H. Sam Archuleta hereby is SUSPENDED from the practice of law for a period of one year from June 12, 1996;

IT IS FURTHER ORDERED that during the time of his suspension, Archuleta shall engage in no activity nor provide any legal advice that would constitute the practice of law or that could lawfully be performed only by a licensed attorney;

IT IS FURTHER ORDERED that Archuleta shall take and successfully complete the Multistate Professional Responsibility Examination prior to seeking reinstatement; and

IT IS FURTHER ORDERED that Archuleta shall pay all costs incurred as a result of these disciplinary proceedings in the amount of $2,463.70 before September 12, 1996, and any balance remaining unpaid after this date shall be reduced to a transcript of judgment and shall accrue interest at a rate of fifteen percent (15%) per year.

IT IS FURTHER ORDERED that this opinion be published in the *Bar Bulletin* and the *New Mexico Reports.*

IT IS SO ORDERED.