1997–NMSC–020

934 P.2d 273

**In the Matter of Eric A. ELMORE, Esq., An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

No. 24088.

Supreme Court of New Mexico.

March 14, 1997.

Sally E. Scott, Albuquerque, Deputy Chief Disciplinary Counsel.

Eric A. Elmore, Las Cruces.

## OPINION

PER CURIAM.

{1} This disciplinary proceeding came before the Court upon the recommendation of the disciplinary board that Eric A. Elmore be indefinitely suspended from the practice of law for a minimum of one year for multiple violations of the Rules of Professional Conduct, 16–101 to 16–805 NMRA. We adopt the board's recommendation and hereby indefinitely suspend respondent.

{2} The formal disciplinary charges filed against respondent contained two counts. The first involved respondent's failure to timely submit advertisements to the legal advertising committee for review. Rule 16–707(B) requires most legal advertisements to be submitted to the committee "prior to or concurrently with the lawyer's first dissemi-nation of the advertisement. . . ." The hearing committee found that respondent violated Rule 16–707(B) by failing to comply with this requirement for his yellow page advertisements in the years 1993, 1994, 1995, and 1996. Respondent did not appeal this finding to the disciplinary board or to this Court. Accordingly, the Court concludes that respondent committed four violations of Rule 16–707(B).

{3} The second count of the specification of charges involved respondent's 1995 representation of Victoria Edwards in a Chapter 7 bankruptcy proceeding. Included in the client's debts was an obligation to Household Retail Services ("HRS") for goods she had purchased at Silo. Although unknown at the time bankruptcy was filed whether the debt was secured or unsecured, respondent listed it as unsecured.

{4} Prior to discharge, respondent received two letters from the law firm representing HRS. The letters claimed HRS was the assignee of a retail installment contract on which Edwards was an obligor and that the debt was secured by a purchase money security interest. Respondent was requested to contact HRS's attorney to advise whether his client wanted to settle, reaffirm, or return the security. Respondent did nothing to determine whether the HRS debt was secured and, if so, what his client wanted to do about it. He also failed to notify his client of the correspondence from the HRS attorney. Respondent testified before the disciplinary board's hearing committee that he routinely advised bankruptcy clients that nothing needed to be done about secured consumer debts because creditors would not bother to repossess.

{5} After discharge, the client began receiving letters and telephone calls from the HRS attorney requesting that she relinquish the collateral or sign a new promissory note. Although that attorney eventually stopped contacting Edwards, she received letters from another law firm nearly one year later concerning repossession of the collateral allegedly securing the same debt.

{6} James Burke, a bankruptcy practitioner and trustee, testified as an expert

witness that a reasonably competent attorney deals with secured debts during bankruptcy, so that the client will not face repossession or further creditor contacts after discharge. He also testified that because the bankruptcy code provides a mechanism for the court to reduce the amount of a secured consumer debt to the current value of the goods, secured creditors are often willing to negotiate a reduced amount the debtor can pay to avoid repossession of their household goods.

{7} Respondent's lackadaisical approach to the protection of his client's interests did not meet the standard of competence required by the Rules of Professional Conduct. Respondent violated Rules 16–101 (competence) and 16–804(D) (conduct prejudicial to the administration of justice) by failing to address the potential secured claim in the bankruptcy proceeding.

{8} Edwards sent the post-discharge letters she received from the HRS attorney to respondent with a letter asking him what could be done about it. On July 10, 1995, respondent and his client had a lengthy telephone conversation concerning the letters and telephone calls from the HRS attorney. In this conversation, which was recorded by Edwards, respondent told her he believed that HRS's attorney had violated the bankruptcy stay by contacting her and suggested that, as an alternative to repossession, she could sign a new installment note for the amount of the debt. Respondent further advised his client that if she sued the HRS attorney at that time, the claim was worth $500 or $1,000; that to increase the value of the claim, he wanted her to sign the note and make one payment on it; that the installment note was unenforceable; that they were going to cash in on the illegal agreement; and that they needed to play along with it. According to respondent, when the HRS attorney started calling her and sending bills on the new agreement, he would "step in and ... find out they've been working you over and away we go."

{9} Respondent's plan was to have his client execute an agreement he believed to be unenforceable and then, if the creditor started sending bills, he would "call them up and ... ask them for money." Moreover, he testified that he thought it likely that once he made that demand, the creditor would pay more because they would assume the client had signed the agreement on her own since they had sent it directly to her and "they might be willing to offer more because of naturally what they're going to assume." Respondent was quite willing to take advantage of what the creditor would "assume" based upon an agreement executed by his client for the specific purpose of generating the erroneous assumption.

{10} Respondent further testified that he had "no duty to educate the other side during settlement negotiations. If they think that they're guilty and if they think that she signed this and sent this back just on her own accord, just because that's naturally what they're going to assume, if they sent it directly to her, and they pay us more money because of that, what's wrong with that? I don't see that there's anything wrong with that." The fact that respondent failed to recognize the wrong troubles this Court.

{11} This Court has stated that "[m]isrepresentation in any form is unacceptable conduct by an attorney." *In re Ruybalid*, 118 N.M. 587, 589, 884 P.2d 478, 480 (1994). In *Ruybalid*, the Court quoted with approval from a formal reprimand issued by the disciplinary board in *In re Ellis* that "[w]hen dealing with an attorney, another person (whether an attorney or a lay person) has the right to expect that the attorney will be honest and straightforward." *Id.*

{12} It is not honest and straightforward for a lawyer to counsel a client to sign an agreement, not because the lawyer intends the client to fulfill the agreement, but because the attorney thinks after it is signed he can "step in", act as if the agreement had been signed in good faith, and feign outrage in order to obtain a better settlement. That is no different than falsifying a document or telling a client to lie. Respondent counseled the fabrication of circumstances designed to enhance the settlement value by misleading the creditor into making an assumption that was not valid. Respondent may not have had a duty to educate the opposition; he did have an obligation not to counsel or engage

in deceit. Respondent counseled deceit and the only reason it did not occur is that his client displayed the integrity that respondent lacked by refusing to go along with his plan.

{13} Respondent violated Rule 16–804(C) (dishonesty) and Rule 16–804(H) (conduct reflecting adversely on fitness to practice law) by counseling his client to engage in an overt misrepresentation in order to increase the settlement value of a potential claim. This Court repeatedly has stated that dishonesty by lawyers will not be tolerated. Respondent's dishonesty, the incompetence of his bankruptcy representation, his lack of remorse, and his blatant disregard for this Court's advertising rules lead this Court to conclude that an indefinite suspension for a minimum of one year, coupled with certain other remedial measures, is the appropriate sanction to be imposed in this case.

{14} NOW, THEREFORE, IT IS ORDERED that Eric A. Elmore hereby is indefinitely SUSPENDED from the practice of law pursuant to Rule 17–206(A)(3) NMRA effective February 19, 1997, for a minimum of one (1) year;

{15} IT IS FURTHER ORDERED that respondent shall be eligible for reinstatement only upon satisfaction of the following conditions:

(1) Respondent shall complete forty (40) hours of continuing legal education in the field of bankruptcy law;

(2) Respondent shall complete ten (10) hours of continuing legal education in the area of professional ethics;

(3) Respondent shall take and pass the multistate professional responsibility examination; and

(4) Respondent shall reimburse Victoria Edwards for reasonable attorney's fees incurred by her in resolving the issue of HRS/Silo's security interest in certain personal property belonging to her;

{16} IT IS FURTHER ORDERED that respondent shall be placed on probation for a period of one (1) year following reinstatement, under the supervision of a licensed New Mexico attorney who devotes a substantial portion of his/her practice to bankruptcy law, which supervising attorney shall be selected or approved by disciplinary counsel;

{17} IT IS FURTHER ORDERED that respondent shall pay the supervising attorney at the reasonable hourly rate of $100.00 per hour within thirty (30) days of billing and in any event before full reinstatement from probation pursuant to Rule 17–214(H)(1); and

{18} IT IS FURTHER ORDERED that respondent shall pay the costs of this disciplinary proceeding in the amount of $3,711.49 on or before April 18, 1997, with interest accruing at the rate of fifteen percent (15%) on any portion of the costs not paid by said date, and that all costs assessed in this matter shall be reduced to a transcript of judgment.

{19} IT IS SO ORDERED.

THOMAS A. DONNELLY, Judge, sitting by designation.

GENE E. FRANCHINI, Chief Justice, not participating.