1997-NMSC-064

950 P.2d 806

**In the Matter of Thomas Scott HYDE, Esq., An Attorney Licensed to Practice Before the Courts of the State of New Mexico.**

**No. 24719.**

Supreme Court of New Mexico.

Dec. 15, 1997.

Sally E. Scott, Deputy Chief Disciplinary Counsel, Albuquerque.

Briggs F. Cheney, Albuquerque, for Respondent.

**OPINION**

PER CURIAM.

[1] This attorney disciplinary proceeding, conducted pursuant to the Rules Governing Discipline, 17–101 through 17–316 NMRA 1997, came before the Court for consideration of the disciplinary board's recommendation that Thomas Scott Hyde be indefinitely suspended for a minimum of twelve months, with conditions for reinstatement. This sanction was recommended for misconduct involving deceit, incompetence, failure to abide by his clients' objectives, lack of diligence, failure to adequately communicate with clients, charging an unreasonable fee, and making false statements in connection with a disciplinary proceeding. Being sufficiently advised, we find that the disciplinary board's decision is appropriate and adopt the board's recommendation in full.

For several years prior to 1996, respondent was employed as an associate with an Albuquerque law firm. From September 1994 to the time he left the firm in May 1996, respondent was assigned to handle the de-

fense of a case that involved claims of defective workmanship and materials in the building of an upscale home in Albuquerque. The firm had been retained by an insurance company to defend the builder, who was one of several named defendants in the suit.

■ On or about March 21, 1996, the assigned judge issued a notice of trial docket listing cases that would be tried beginning Tuesday, May 28, 1996. Respondent's case was the second case listed. According to the firm's internal practice, upon receipt of the trial docket, respondent should have immediately notified his supervising attorney, who then would have cleared his schedule for the trial and become involved in trial preparations because of the potential exposure and complexity of the case. The insurer and the insured also should have been informed of the trial setting upon receipt of the docket; this was essential because the insurance company required certain information at set times prior to trial, including, but not limited to, evaluations of potential exposure. At the same time, a paralegal would have been assigned to assist with pretrial preparations. Respondent failed to follow any of the firm's internal practices in this regard.

■ Late in the afternoon of May 23, 1996, the case in first position on the docket settled, thus advancing respondent's case into the first position with trial automatically scheduled to begin on Tuesday morning, May 28, 1996. The next morning, another attorney in the firm received a telephone call from the adjuster on respondent's case. The adjuster advised the attorney that respondent had just informed him for the first time that the case was on the trial docket, with trial scheduled to begin the following Tuesday; the adjuster expressed concern about whether the case was ready for trial. Respondent's supervising attorney, who was taking depositions out of state, for the first time was informed of the trial setting and that the adjuster had not been informed that the case was on a trial docket. He directed that staff be mobilized to work on the case over the Memorial Day weekend and returned to Albuquerque that afternoon to begin trial preparations.

■ In the course of reviewing the file, it was determined that significant pieces of discovery and trial preparation were missing: no subpoenas had been prepared or issued; no deposition summaries had been prepared; there were no transcripts for some depositions; no jury instructions had been drafted; no interrogatories, document requests, or other discovery requests had been submitted by respondent.

■ During trial preparation on Saturday, May 25, 1996, respondent was pressed about the whereabouts of certain documents, including deposition transcripts and summaries. Although respondent said that the deposition summaries were lost in the computer, there was no indication that any deposition summaries had ever been prepared. Respondent's lack of candor led to him being given the opportunity to resign; respondent did resign and left the office that day.

■ On Sunday morning, in response to a request for a copy of a particular deposition transcript, the plaintiff's attorney advised that the reason the transcript was missing was that respondent had not attended the deposition. This information caused the supervising attorney to explore respondent's work on the case in more detail, including a review of the bills that had been sent to the client for work respondent claimed to have done on the case. It was determined that the client had paid for a number of services that respondent had not actually performed: preparation of interrogatories and requests for production during September and October 1994; preparation of a motion for summary judgment in December 1994; preparation of a reply in support of the summary judgment motion and a supporting affidavit in February 1995; attendance at a hearing on the summary judgment motion in March 1995; preparation of requests for admissions in January 1995; preparation of a second set of requests for admissions in March 1995; attendance at four depositions; and preparation of a second summary judgment motion. The fees that had been paid for services respondent had not performed were refunded to the client by the firm.

■ The case went to trial as scheduled, after several firm attorneys and staff worked

around the clock over the Memorial Day Weekend. A satisfactory outcome resulted from the trial.

■ In his response to the disciplinary complaint concerning this case, respondent insisted that he had prepared discovery pleadings, but did not file them because they were unnecessary due to the discovery conducted by other defendants. He also contended that he had attended a portion of two depositions for which he had billed the client, however other witnesses and the deposition transcripts indicated he did not attend.

■ Unfortunately, the case described above was not the only one in which respondent falsified billing entries while failing to act on his client's behalf.

■ On February 20, 1995, a suit was filed in the First Judicial District for professional chiropractic malpractice. The professional liability insurer for the defendant retained counsel to defend the case under a reservation of rights. The insurer then hired respondent's firm to provide a coverage opinion. Respondent was assigned to provide the coverage opinion, and did so by letter dated April 7, 1995. After discussing options for raising the coverage issues, respondent was directed to file a motion to intervene in the malpractice suit.

■ Over the next few months, respondent told the adjuster that he had prepared and filed a motion to intervene and that it was set for hearing. On August 28, 1995, respondent reported that the motion to intervene had been granted. On September 27, 1995, the adjuster wrote to respondent, referencing their August 28, 1995 conversation and advising respondent that he still had not received copies of the intervention pleadings or the court's order. Respondent failed to answer the letter or send any pleadings. Over the course of the next six months, the adjuster wrote to respondent on at least four occasions, requesting pleadings, information concerning the status of the case, and information concerning the coverage issues. Respondent failed to respond to these communications.

■ On May 16, 1996, the adjuster faxed a letter to respondent, advising that the mal-practice case was set for trial in July and that he would attend the mediation scheduled on May 30, 1996. On May 22, 1996, the adjuster again tried to reach respondent and asked respondent's secretary to fax him a copy of the order granting intervention. On May 24, 1996, the adjuster and respondent spoke by telephone during which respondent stated that he would leave copies of the requested pleadings at the adjuster's Albuquerque hotel. On May 28, 1996, when the adjuster called, he was told respondent was no longer employed by the firm. The adjuster then advised the legal assistant to respondent's supervising attorney that he was coming to New Mexico for the mediation and asked her to send him copies of the motion to intervene and motion for summary judgment filed by respondent. When the legal assistant reviewed the file, she found there was very little in it.

■ After he was informed of this, the supervising attorney reviewed the file and found that no motion to intervene, motion for summary judgment, or any other pleading had been filed by respondent. He contacted both the plaintiff and defense lawyers, neither of whom was aware of any involvement by respondent in the case. The supervisor immediately prepared and filed a motion to intervene, with a complaint in intervention attached, and sent both attorneys a proposed motion for summary judgment on the issue of coverage. The case settled at mediation.

■ Throughout the case, respondent submitted time entries for work allegedly done by him, which were billed to and paid by the insurer. The time slips submitted by respondent included entries for preparation of a motion to intervene and motion for summary judgment, telephone calls to plaintiff and defendant's counsel, review of a response from the plaintiff to motion to intervene, and attendance at a telephonic hearing on motion to intervene. Because none of these had actually occurred, the fees paid by the client for these services were refunded by the firm.

■ In responding to the disciplinary complaint filed concerning this case, respondent continued to insist that he had spoken with the plaintiff's attorney concerning the intervention and coverage issues. In the

course of investigating this complaint, disciplinary counsel spoke to both the plaintiff's and the defendant's attorneys, neither of whom had spoken with respondent concerning the case or was aware of his involvement in the case.

Respondent's conduct in these two cases and in his dealings with disciplinary counsel violated numerous provisions of the Rules of Professional Conduct: Rule 16–101, failing to provide competent representation; Rule 16–102, failing to abide by the client's decisions concerning the objectives of the representation; Rule 16–103, failing to act with reasonable diligence and promptness in representing a client; Rule 16–104(A), failing to keep the client reasonably informed about the status of a matter; Rule 16–105(A), charging an unreasonable fee by charging the client for services not performed; Rule 16–801(A), knowingly making a false statement of material fact in connection with a disciplinary proceeding; Rule 16–804(C), engaging in conduct involving dishonesty, fraud, deceit and misrepresentation; and Rule 16–804(H), engaging in conduct that adversely reflects on his fitness to practice law.

After formal disciplinary charges were filed, respondent, for the first time, retained counsel to represent him. The response filed on behalf of respondent to the specification of charges admitted the misconduct alleged, except for a few specific factual allegations. Although making full disclosure to the disciplinary board can be considered in mitigation, in this case respondent's candor was simply "too little, too late" to prevent the disciplinary sanctions imposed in this matter.

[19] It was also suggested in mitigation that respondent's misconduct was an inappropriate and unfortunate response to pressures at home and at work that he could not handle. Indeed, it was undisputed in the proceedings below that respondent had been well-respected by his peers, both within the firm and the larger legal community. These facts, however, do little more than to make this occasion all the sadder. Respondent's deceit was not a one time lapse in judgment; rather, it was a pattern of dishonesty that continued for almost two years. The potential for harm to his clients was real and significant. Clients must be able to rely on their lawyers to protect their interests in legal proceedings. They must be able to believe what their lawyers tell them about their cases. By deceiving his clients and abandoning their interests in response to the undeniable pressures of being a young associate and a father, respondent harmed his clients, his firm, and ultimately, himself and his family. The lesson from this case should be clear: the pressures of the practice of law provide neither an excuse nor a mitigating factor for deceit. Dishonest conduct by lawyers will not be tolerated. *In re Elmore,* 1997 NMSC 020, 123 N.M. 79, 934 P.2d 273.

If there is another lesson to be learned, it may be that law firms would be well advised to have in place a procedure by which associates can alert their supervisors when they are feeling overloaded or overburdened. Doing so not only may save a young lawyer's career but also may save the firm from facing liability issues stemming from those matters assigned to a new associate.

[21] Provision of a safety net for attorneys to seek help if they are feeling overwhelmed also may aid supervising attorneys in complying with *their* responsibilities under the Rules of Professional Conduct. Rule 16–501(A) specifically requires that a "lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct." We neither find nor suggest that the firm that employed respondent did not comply with this rule. We do suggest that a firm should do more than simply communicate its expectations for billable hours and work product. It should also ensure that its lawyers are competently handling the tasks assigned to them and are able to obtain assistance when it is needed. To do less can spell disaster, not only for a lawyer in respondent's position, but also for the firm that employs him or her.

NOW, THEREFORE, IT IS ORDERED that the recommendation hereby is ADOPTED and Thomas Scott Hyde hereby is SUSPENDED from the practice of law for

an indefinite period not less than twelve (12) months pursuant to Rule 12–206(A)(3) effective October 31, 1997;

IT IS FURTHER ORDERED that the following conditions must be satisfied before the filing of any petition for reinstatement pursuant to Rule 17–214(B)(2):

(1) Respondent shall obtain during the period of suspension ongoing psychological treatment to address the problems that may have led to or contributed to the violations of the Rules of Professional Conduct;

(2) Respondent shall continue to receive psychological treatment until released from treatment with a report stating that he has gained the maximum benefit of psychological treatment to address the problems that may have led to or contributed to the violations of the Rules of Professional Conduct;

(3) At least thirty (30) days prior to the filing of any petition for reinstatement, respondent shall provide to the disciplinary board a report from the therapist from whom he has received treatment. The report shall state, in the therapist's opinion, that the respondent is sufficiently recovered from the problems discussed in the June 26, 1997, report of Dr. Richard Reed to honestly and responsibly practice law;

(4) At least thirty (30) days prior to the filing of any petition for reinstatement, respondent shall provide to the office of disciplinary counsel a written waiver that shall allow disciplinary counsel to discuss the report(s) and matters pertaining to said report(s) provided by respondent's therapist(s);

(5) Should respondent be reinstated by this Court, he shall have a one-year probationary period during which he shall be supervised by a licensed New Mexico attorney selected or approved by disciplinary counsel. Respondent shall meet with the supervising attorney as often as the supervising attorney directs, but at least on a monthly basis. Respondent shall abide by all directives of the supervising attorney concerning management of respondent's law practice and caseload;

(6) Respondent shall permit the supervising attorney full access to all case files and any other documents necessary for the supervising attorney to ascertain whether respondent is exercising appropriate time and stress management skills for dealing with his caseload and law practice and whether there is evidence of dishonesty, deceit, fraud or misrepresentation, lack of competence, lack of diligence, failure to abide by client's decisions concerning the objectives of the representation, failure to keep clients adequately apprised of the status of their legal matters, charging an unreasonable fee by charging clients for work not done, conduct prejudicial to the administration of justice, conduct that adversely reflects on his fitness to practice law;

(7) The supervising attorney shall advise disciplinary counsel on a quarterly basis during the probationary period whether respondent has met as required and is exercising appropriate time and stress management skills for dealing with his caseload and law practice and whether there is evidence of dishonesty, deceit, fraud or misrepresentation, lack of competence, lack of diligence, failure to abide by client's decisions concerning the objectives of the representation, failure to keep clients adequately apprised of the status of their legal matters, charging an unreasonable fee by charging clients for work not done, conduct prejudicial to the administration of justice, or conduct that adversely reflects on his fitness to practice law;

(8) Respondent shall reimburse the supervising attorney as agreed upon for the time the supervising attorney spends meeting and working with respondent;

(9) Respondent shall reimburse the disciplinary board for all costs incurred in the investigation and prosecution of these disciplinary proceedings pursuant to Rule 17–106 NMRA in the amount of $339.49 prior to reinstatement to practice law. All costs shall be reduced to a transcript of judgment and shall accrue interest at a rate of 8% per annum;

(10) Respondent shall advise persons for whom he provides legal research or legal

assistant services during the period of suspension, or for whom he provides legal services of any sort during the probationary period, of his disciplinary status, whether he provides such services as an employee, an independent contractor, or on a pro bono basis. During the probationary period, respondent shall inform all persons for whom he provides legal services of the terms and conditions of his probation and the name, address, and telephone number of the supervising attorney; and

(11) The following notice shall be prominently posted in the reception area of any law office at which respondent provides legal services during the probationary period:

To our clients:

Please be advised that the law practice of Thomas Scott Hyde is being supervised by [Supervising Attorney's Name], Telephone Number ——–——. Should you have any unanswered questions or concerns about the handling of your legal work, please contact [the Supervising Attorney].

This order shall have the force and effect of a judgment.

IT IS SO ORDERED.

/s/ Gene E. Franchini
Gene E. Franchini, Chief Justice

/s/ Joseph F. Baca
Joseph F. Baca, Justice

/s/ Pamela B. Minzner
Pamela B. Minzner, Justice

/s/ Patricio M. Serna
Patricio M. Serna, Justice

/s/ Daniel A. McKinnon, III
Daniel A. McKinnon, III, Justice