2000-NMSC-001

993 P.2d 736

**In the Matter of Forrest R. CARLTON, II, Esq., An Attorney Licensed to Practice Before the Courts of the State of New Mexico.**

No. 25,895.

Supreme Court of New Mexico.

Jan. 4, 2000.

David A. Baca, Deputy Disciplinary Counsel Albuquerque.

Forrest R. Carlton, II, Santa Fe.

OPINION

PER CURIAM.

{1} This matter came before the Court following disciplinary proceedings conducted pursuant to the Rules Governing Discipline, 17–101 to 17–316 NMRA, in which respondent, Forrest R. Carlton, was found to have committed multiple violations of the Rules of Professional Conduct, 16–101 to 16–805 NMRA. The Court finds that indefinite suspension is the appropriate discipline and hereby adopts the recommendation of the disciplinary board that respondent be indefinitely suspended from the practice of law pursuant to Rule 17–206(A)(3) NMRA. In addition, certain conditions are imposed that must be satisfied before consideration of any petition for reinstatement.

{2} In January 1998, the office of disciplinary counsel received a complaint against respondent from Manuel Griego, whom respondent had represented in a domestic relations case. The complaint generally alleged that in the course of the representation respondent failed to adequately represent his interests and, that following the termination of the representation, respondent failed to provide an accounting and return the complete file to his client.

{3} In July 1998, the office of disciplinary counsel received two separate complaints against respondent, one filed by Anthony Ayon and another filed by his mother. The complaints stated that respondent had been retained to represent Mr. Ayon in a criminal case. The complaints alleged that respondent failed to provide competent representation, failed to communicate, failed to act with reasonable diligence and promptness, and failed to provide an accounting for a $1300.00 retainer paid at the beginning of the representation. In September 1998, the office of

disciplinary counsel received another complaint against respondent filed by Mr. Ayon, which contained basically the same allegations contained in his first complaint.

{4} In September 1998, the office of disciplinary counsel received a complaint against respondent submitted by Jane Springer. The complaint generally alleged that respondent had failed to adequately represent her interests in a real estate matter and had failed to promptly respond to reasonable requests for information, failed to act with reasonable diligence and promptness, and that he failed to account for a $3,000.00 retainer.

{5} The office of disciplinary counsel mailed a series of letters to respondent requesting that he answer the pending complaints. After submitting his initial response to the Griego complaint, respondent failed to reply to a request for supplemental information. Respondent wholly failed to respond to numerous requests for responses to the other parties' complaints.

{6} Formal charges subsequently were filed against respondent on December 2, 1998, and copies of the specification of charges and the notice and designation of hearing committee were served on respondent. Respondent failed to file an answer to the charges and, pursuant to Rule 17–310(C) NMRA, the allegations contained in the specification of charges were deemed admitted. A hearing date to consider any facts in aggravation or mitigation of respondent's conduct was set for on March 4, 1999, and notice of the hearing was served on respondent.

{7} Respondent's first involvement in these proceedings was by way of a letter dated March 2, 1999, in which he acknowledged his failure to respond to requests for information and to file an answer to the specification of charges. Respondent acknowledged that the charges had been deemed admitted. In addition to providing documentation indicating that he had refunded the $3,000.00 retainer to Ms. Springer, respondent also advised disciplinary counsel and the hearing committee of certain personal problems he was experiencing stemming from the care of his ailing mother. Respondent subsequently appeared and testified at the sanction hearing, however, he called no other witnesses.

{8} Thereafter, on March 31, 1999, despite the fact that requested findings of fact, conclusions of law, and recommendations for discipline had been submitted, respondent filed a motion to reopen the hearing for the purpose of receiving additional evidence. In his motion, respondent disclosed for the first time that he was being treated by a psychiatrist. The motion was granted by the hearing committee for the limited purpose of considering the evidence to be offered by the psychiatrist, who subsequently testified that respondent suffers from bipolar disorder for which he is currently taking medication.

{9} An attorney who is unable to competently and diligently represent his or her clients, and who also fails to fulfill the duty to cooperate with the disciplinary process, is almost certainly facing a term of suspension from the practice of law. *In re Canevaro*, 1997–NMSC–033, 123 N.M. 576, 943 P.2d 1029. in the instant case, the complaints filed against respondent detailed a pattern of misconduct in neglecting his duties to his clients, and ultimately failing to terminate the representations in an orderly fashion without providing an accounting to his clients and without providing the necessary refunds on a timely basis. While respondent belatedly participated in these proceedings, his participation did not occur until after he had ignored numerous letters from the office of disciplinary counsel and after the charges filed herein had been deemed admitted by the hearing committee.

{10} This Court notes that respondent was candid in acknowledging his failure to devote the proper and necessary attention to his clients and to these proceedings. When respondent appeared before the hearing committee and the disciplinary board he was remorseful and apologetic. Nevertheless, it was respondent's position that while the charges had been deemed admitted, his bipolar condition was the type of mitigating factor that could justify a reduction in the discipline to be imposed. It was respondent's position that since he was being treated for his bipolar condition, a probated sus-

pension was the appropriate discipline in this case.

{11} A mental disability such as respondent's bipolar condition would be among factors considered in mitigation. However, in order for such a condition to be considered in mitigation, it must be established through medical evidence that the respondent attorney is affected by a mental disability, that the mental disability caused the misconduct, that recovery from the mental disability has been demonstrated by a meaningful and sustained period of successful rehabilitation, and that the recovery arrested the misconduct and recurrence of that misconduct is unlikely. *ABA Standards for Imposing Lawyer Sanctions* 9.32(i)(1–4) (February 1992 supp.).

{12} An attorney who has abdicated the ethical responsibilities owed to the court and clients, and who then attempts to mitigate these failings, must fully and completely satisfy this evidentiary burden in order for an alleged mental disability to be considered in mitigation. In this case, respondent established through his psychiatrist's testimony that he suffers from a bipolar disorder and that the disorder contributed to a pattern of misconduct. However, there was insufficient evidence to demonstrate a meaningful and sustained period of successful rehabilitation and to show that the condition has been controlled and that a recurrence of the misconduct is unlikely.

{13} Respondent's conduct violated numerous provisions of the Rules of Professional Conduct: Rule 16–101, by failing to provide competent representation; Rule 16–102(A), by failing to abide by a client's decisions concerning the objectives of the representation; Rule 16–103, by failing to act with reasonable diligence and promptness in representing a client; Rule 16–104(A), by failing to keep a client reasonably informed about the status of a matter and by failing to promptly comply with reasonable requests for information; Rule 16–116(D), by failing to timely surrender papers and property to which a client was entitled and by failing to timely refund any advance payment of fee that had not been earned; Rule 16–804(D), by engaging in conduct that is prejudicial to the administration of justice; and Rule 16–804(H), by engaging in conduct that adversely reflects on his fitness to practice law. Respondent also was found to have violated Rule 16–801(B), by failing to respond to lawful requests for information from the office of disciplinary counsel, and Rule 16–803(D), by failing to cooperate with disciplinary counsel in the course of the investigation.

{14} The disciplinary board recommended that respondent be indefinitely suspended and ordered to pay the costs of this proceeding. In addition, the disciplinary board recommended that prior to respondent being permitted to apply for probationary reinstatement, he must provide proof of compliance with certain conditions. Based on the nature of the multiple violations committed by respondent, as well as the extent of the aggravating factors present in this case, the Court agrees that the recommended discipline is appropriate.

{15} NOW, THEREFORE IT IS ORDERED that the recommendation hereby is approved and Forrest R. Carlton hereby is indefinitely suspended from the practice of law pursuant to Rule 17–206(A)(3) NMRA;

{16} IT IS FURTHER ORDERED that respondent shall be permitted to file a motion for permission to apply for reinstatement pursuant to the requirements of Rule 17–214 NMRA;

{17} IT IS FURTHER ORDERED that the following conditions shall be satisfied prior to any reinstatement application:

1. Respondent shall take and pass the Multistate Professional Responsibility Examination;

2. Respondent shall pay all costs in the amount of $643.22 prior to the filing of any application for reinstatement;

3. Respondent shall reimburse fees to Anthony Ayon in the amount of $1,300 on or before November 1, 1999;

4. Respondent shall document that he has provided Manuel Griego with an accounting regarding fees paid during the representation of Mr. Griego and also shall relinquish the entire file regarding his representation of Mr. Griego to his former client. Should respondent retain any copies of the Griego file for his own records,

said copies are to be made at respondent's own expense;

5. Respondent shall provide documented compliance with Rule 17–212 of the Rules Governing Discipline by filing an affidavit of compliance with this Court and by furnishing satisfactory proof of compliance to the office of disciplinary counsel;

6. Respondent shall document that he has, at his own expense, received appropriate treatment for the health and personal problems that were identified by respondent as a mitigating factor;

7. Respondent shall certify, by letter from a New . Mexico attorney in good standing, that his financial records are current and that he has opened a qualifying IOLTA account;

8. Respondent shall complete a minimum of sixteen (16) hours of continuing legal education in the areas of professional ethics and/or law office management at his own expense;

9. Respondent shall demonstrate to the satisfaction of this Court that he has the moral qualifications and is fit to resume the practice of law, and that the resumption of his practice will not be detrimental to the integrity and standing of the bar, the administration of justice and the public interest; and

10. Respondent shall certify, by a written statement from a psychotherapist, that in the therapist's opinion respondent's bipolar disorder does not materially interfere with his ability to practice law.

{18} IT IS FURTHER ORDERED that should respondent satisfy all conditions and be reinstated to the active practice of law, he shall be placed on supervised probation for a minimum period of three (3) years with the following conditions:

1. Respondent shall be supervised by a licensed New Mexico attorney approved by disciplinary counsel;

2. Respondent shall observe all Rules of Professional Conduct and Rules Governing Discipline;

3. Respondent shall meet with his super- -vising attorney at times and places directed by the supervisor and shall follow all reasonable directions of his supervisor in a prompt and satisfactory manner;

4. The supervising attorney shall advise disciplinary counsel on a quarterly basis as to whether respondent has met with him or her as required, is following the supervisor's instructions regarding caseload management and management of his law practice, and that he has established appropriate record keeping methods for his trust accounts;

5. Respondent shall pay the supervising attorney a reasonable fee, to be approved by disciplinary counsel, for the time spent supervising respondent.

6. Respondent shall provide the office of disciplinary counsel, on a quarterly basis, a written statement from his psychotherapist that in the therapist's opinion respondent's bipolar disorder does not materially interfere with his ability to practice law; and

7. Respondent shall promptly and timely respond to any and all complaints filed with the Disciplinary Board and shall promptly and timely respond to any and all requests from disciplinary counsel for additional information relating to such complaints.

{19} IT IS FURTHER ORDERED that should other disciplinary complaints alleging misconduct be filed and are found by disciplinary counsel to have sufficient merit to justify filing additional formal charges against respondent, or if respondent fails to comply with any of the terms of his probation, he shall be held in contempt pursuant to Rule 17–206(G) NMRA, and may be censured, fined, suspended, or disbarred;

{20} IT IS FURTHER ORDERED that respondent shall keep the Supreme Court, the State Bar of New Mexico, and the Disciplinary Board apprised of his current office address and telephone number and will notify the clerk of the Supreme Court, the State Bar of New Mexico, and the Disciplinary Board of any changes in his office address and telephone number; and

{21} IT IS FURTHER ORDERED that the costs in the amount of $643.22 shall be reduced to a transcript of judgment.

{22} IT IS SO ORDERED.