2001-NMSC-025

29 P.3d 1044

**In the Matter of Rondolyn R. O'BRIEN, an Attorney Licensed to Practice Law Before the Courts of the State of New Mexico.**

No. 26,508.

Supreme Court of New Mexico.

Aug. 22, 2001.

Christine E. Long, Deputy Disciplinary Counsel, Albuquerque, NM, for the Disciplinary Board.

Briggs F. Cheney, Albuquerque, NM, for Respondent.

## OPINION

PER CURIAM.

{1} This matter came before the Court upon the recommendation of the disciplinary board to accept a conditional agreement admitting the allegations and consent to discipline tendered by respondent, Rondolyn R. O'Brien, pursuant to Rule 17–211 NMRA 2001 of the Rules Governing Discipline. Under that agreement respondent admitted the allegations that she violated Rules 16–101, 16–103, 16–104(B), 16–105(A), 16–115(A), 16–302, 16–804(C) and 16–804(H) NMRA of the Rules of Professional Conduct. We adopt the recommendation and hereby indefinitely suspend respondent from the practice of law pursuant to Rule 17–206(A)(3) NMRA for a minimum period of at least two (2) years with specific conditions.

## I. Fees

{2} Respondent's case is an unfortunate example of delay, deceit, charging excessive fees, and mishandling funds, which might have been avoided had respondent been willing to seek assistance in addressing her physical and mental problems as they related to her law practice. By not seeking such aid, however, respondent not only prolonged her problems, but also caused her clients to suffer along with her.

{3} In October 1994, respondent prepared a will for a particular client. Upon the client's death in 1998, her son hired respondent to handle the approximately $200,000.00 estate and paid respondent a $5,000.00 retainer. Decedent's children agree that respondent told them the retainer was larger than normal due to the fact that there might be a will contest. Ultimately, respondent charged almost the entire $5,000.00 as her fee, without corresponding work product to justify the charge.

{4} New Mexico attorneys should be aware that merely noting that work was done and submitting a corresponding billing statement may not suffice to justify the fee charged. "While it is not within the jurisdiction of the disciplinary board or the office of disciplinary counsel to regulate fees charged by attorneys, it is within their jurisdiction to enforce the Rules of Professional Conduct." *In re Jones,* 119 N.M. 229, 230, 889 P.2d 837, 838 (1995). As in *Jones,* respondent's fee was grossly excessive. Client files must contain work to justify the fee. Whether the evidence of work is in notations of research, time sheets, copies of depositions, evidence of time spent in hearings or meetings; such evidence is essential. Respondent's file contained scant documentation to justify her fee.

{5} From March 3, 1998, through March 10, 1998, respondent met with decedent's son and others two times for approximately one hour and thirty minutes total; and prepared, filed, and mailed out the initial probate pleadings. Respondent alleged this work took a total of eleven hours and warranted $1,650.00 in fees. The initial probate pleadings included only seven documents that were based almost in total upon commonly used probate forms.

{6} On March 23, 1998, respondent charged one hour to review the affidavit of publication from *Health City Sun* and to "review file" for a fee of $150.00. The affidavit of publication is a one-page, standard document indicating that the notice to creditors has been published two consecutive times, and again there was no indication of any need to review the file. On May 5, 1998, respondent charged .5 hours to "review file" for a fee of $75.00 with no corresponding work product in the file or any indication for a need to review the file.

{7} On September 29, 1998, respondent charged 1.3 hours ($195.00) to "review letter [from decedent's son] and documents received from client; work on file." The letter of September 26, 1998, provided copies of two estate receipts, informed respondent that he was close to having all the medical bills paid, that he had received a refund from title insurance company, and that he had received funds from the estate liquidators for sale of personal property. Decedent's son requested an accounting of expenses and wanted to know approximately how long it would take to close the estate. In what respondent alleged was "a copy of the ... file" she provided absolutely no work product or correspondence relating to the September 26, 1998, letter and/or the two receipts.

{8} From March 11, 1999, to April 5, 1999, respondent charged 9.6 hours to review a four-page handwritten accounting of the estate and to prepare the final documents to close out the estate. The "final documents" respondent provided were a verified statement, a final account, a schedule of distribution; and an inventory. Respondent provided no inventory of the list of the assets that existed at the time of the decedent's death in the file. The family's handwritten note was the entire basis for the final account. The verified statement was a commonly used estate form from the New Mexico Probate Manual. *See* William N. Henderson, *New Mexico Probate Manual,* Issue 4, p. 149 (2d ed.1997). Decedent's son terminated respondent's representation and retrieved his file in October 1999. New counsel's review of the file revealed that none of the estate forms

were completed and contained only minimal information.

{9} This Court has stated that " '[a]ny fee is excessive when absolutely no services are provided.' " *In re Dawson,* 2000–NMSC–024, 129 N.M. 369, 372, 8 P.3d 856, 859 (quoting *In re Jones,* 119 N.M. 229, 230, 889 P.2d 837, 838 (1995)); *see also In re Martinez,* 108 N.M. 252, 255, 771 P.2d 185, 188 (1989) ("when an attorney takes even a minimal fee from a client and does little or no work on the client's case, that fee is excessive"). It is equally true that exaggerating time spent on a task to increase a fee is dishonest and makes that fee excessive. *See In re Archuleta,* 1996–NMSC–039, 122 N.M. 52, 920 P.2d 517. An attorney's charge for "billable time" is an amorphous concept for many clients, thus it is imperative that all fees can be justified by the attorney. The attorney, not the client nor the disciplinary board, has the burden of proving the value of services rendered to the client for which the attorney is claiming payment or credit. *Van Orman v. Nelson,* 78 N.M. 11, 427 P.2d 896 (1967), *rev'd on other grounds,* 80 N.M. 119, 452 P.2d 188 (1969). "[T]he pressures of the practice of law provide neither an excuse nor a mitigating factor for deceit. Dishonest conduct by lawyers will not be tolerated." *In re Hyde,* 1997–NMSC–064, ¶ 19, 124 N.M. 363, 366, 950 P.2d 806, 809; *see also In re Elmore,* 1997–NMSC–020, 123 N.M. 79, 934 P.2d 273.

{10} Respondent's deceit as to the time spent on the probate matter at issue resulted in violations of Rule 16–101, by failing to provide competent representation to her client; Rule 16–103, by failing to act with reasonable diligence when representing a client; Rule 16–105(A), by charging an unreasonable fee; Rule 16–804(C), by engaging in conduct involving dishonesty or misrepresentation; and Rule 16–804(H), by engaging in conduct that adversely reflects on her fitness to practice law.

## II. Delay

{11} Respondent's focus on her personal problems to the exclusion of her law practice resulted in her making misstatements to justify her remarkable delay in the handling of the estate matter. Respondent told decedent's son in April 1999, and again in July 1999, that the estate would be finalized in a couple of months, as she was only waiting for the New Mexico estate tax clearance but that the State was running behind in its work. Respondent wrote decedent's son a letter on July 26, 1999, stating: "I am waiting for the final tax clearance from the New Mexico Taxation and Revenue Department." Respondent stated that she "routinely did [seek a state tax clearance] so that [she] would have the necessary information in [her] file to show that federal estate taxes were not due." Absent from respondent's file, however, was any evidence that she took action to obtain the New Mexico estate tax clearance. Further, the New Mexico Taxation and Revenue Department had no record of any request from respondent for an estate tax clearance in this matter. Section 2010 of the Internal Revenue Code states no return was required for estates whose gross estate is less than $625,000; therefore no certificate pursuant to NMSA 1978, Section 7–7–8 was required to demonstrate that New Mexico estate tax liability has been satisfied in the case as the estate was several hundreds of thousands of dollars below the threshold level for seeking a tax clearance.

{12} Respondent's conduct violated Rule 16–101, by failing to provide the required "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation;" Rule 16–103, by failing to "act with reasonable diligence and promptness in representing a client;" Rule 16–104(B), by failing to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation;" Rule 16–302, by failing to make reasonable efforts to expedite a legal matter; Rule 16–804(C), by engaging in conduct involving dishonesty and misrepresentation; and Rule 16–804(H), by engaging in conduct that adversely reflects on her fitness to practice law.

{13} Misrepresentations by an attorney, the very person with whom the client has placed his or her trust, is unconscionable. "Clients must be able to rely on their lawyers to protect their interest in legal

proceedings." *In re Hyde,* 1997–NMSC–064 at ¶ 19, 124 N.M. at 366, 950 P.2d at 809. There is no justifiable excuse for deceitful practice, and once such deceit has occurred it is essentially impossible to guard against future misrepresentations. *See In re Chavez,* 1996–NMSC–059, 122 N.M. 504, 927 P.2d 1042. Once a professional deems it appropriate to make any sort of misrepresentation to a client for whatever reason, all his or her statements must be viewed with suspicion. A lawyer who betrays this fundamental trust leaves this Court with no choice but to take away the attorney's right to practice law.

### III. Failure to Act

{14} Another of respondent's clients filed a disciplinary complaint based upon respondent's failure to act. In or about March 1997, a particular client retained respondent in a child custody matter and paid respondent a $1,587.44 retainer. Respondent filed an entry of appearance, sent one letter to opposing counsel, and allegedly reviewed correspondence provided by the client. Respondent took no other action in the case.

{15} By letter dated July 17, 1997, the client terminated respondent's services and requested a "statement of account and a refund of the unused portion of the $1,500 retainer fee to me ... by July 31, 1997." The client wrote to respondent again on November 14, 1997, on June 26, 1999, and on July 26, 1999. Each time, he requested an accounting and refund of monies not earned. No response from respondent was received, apart from four letters from respondent's secretary detailing respondent's various illnesses and promising to respond as soon as possible. Respondent's response to the client's disciplinary complaint was that she had "treated him poorly" and that because he was a friend she "put his requests on the back burner to attend to 'regular' clients of mine." On August 25, 2000, almost three years after she was terminated, respondent refunded the retainer fee.

{16} This Court has previously noted that one of the most damaging disciplinary violations is when an attorney fails to act for his or her client and also fails to communicate with that client. *In re Smith,* 115 N.M.

769, 771, 858 P.2d 857, 859 (1993). "The ABA Comment to Rule 16–103 notes that 'no professional shortcoming is more widely resented than procrastination.' It further notes that even if the client's interests are not adversely affected by a lawyer's lack of diligence, 'unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness.' The same is no less true of the lawyer's failure to keep his clients informed about their legal matters." *Id.*

{17} As in the previous matter, respondent was suffering from physical and mental ailments during the time she failed to respond to the client's request for refund and statement of account. Respondent's decision to abdicate her law practice during the times of illness, rather than to seek aid from other attorneys, was not an acceptable decision. This Court has repeatedly stated that a medical condition, though met with sympathy and compassion, is not to be considered as a mitigating factor in discipline absent a meaningful and sustained period of successful rehabilitation. *See In re Carlton,* 2000–NMSC–001, 128 N.M. 419, 993 P.2d 736; *In re Smith,* 115 N.M. 769, 858 P.2d 857 (1993); *In re Sparks,* 108 N.M. 249, 771 P.2d 182 (1989). All law practices should strive to ensure that safeguards are in place to protect client interests in the event of attorney illness or other misfortune. *See In re Hyde,* 1997–NMSC–064,¶¶ 20, 21, 124 at 366, 950 P.2d at 809.

{18} Sole practitioners might be more vulnerable to disciplinary situations by virtue of their not having the benefit of working with a support system that might include secretarial support, paralegals, or other attorneys. It is therefore imperative that the solo attorney, who may be suffering from problems that impact his or her practice of law, make arrangements with another attorney or attorneys to assist if it become necessary. "A client can be harmed just as seriously by an attorney who fails to discharge ethical responsibilities because of illness, as by one who does so for another reason. Rule 16–116(A) compels lawyers not to undertake representation, or, if undertaken, to with-

draw from the representation, if 'the lawyer's physical or mental condition materially im-pairs the lawyer's ability to represent the client....' " *In re Martin*, 1999–NMSC–022, ¶ 15, 127 N.M. 321, 325, 980 P.2d 646, 650. Clients cannot be left floundering with no direction and no communication. At the very least, consistent communication with the client is a mandate to all law practices. Attorneys who fail to communicate in a timely and quality manner with their clients are destined to have disciplinary problems. "The lawyer cannot leave it to the client to initiate communication and still satisfy his obligations under Rule 16–104." *In re Reif*, 1996–NMSC–026, 121 N.M. 758, 762, 918 P.2d 344, 348.

> When one contracts with an attorney for legal services, he or she is entitled to expect that the attorney will take action of some sort. If more information is needed from the client in order to proceed, it is the attorney's responsibility to notify the client; it is not the client's responsibility to initiate all inquiries to the attorney in order to insure that essential steps are being taken.

*In re Carrasco*, 106 N.M. 294, 295, 742 P.2d 506, 507 (1987).

### IV. Trust Account

{19} Perhaps the most egregious symptom of respondent's neglect of her law practice was that her trust accounting fell into disarray. Despite his repeated requests, in October 1999, respondent provided the client in the estate matter with a billing statement charging the estate a total of $4,746.84 for the work done in the almost one and one-half years of representation. Of the $5,000.00 retainer fee paid to respondent, beginning on March 9, 1998, and until the representation was terminated, insufficient monies were maintained in trust in relation to the work respondent alleges she did. For example, on April 30, 1998, respondent alleged she had earned $1,958.00, therefore $3,042.00 of the initial retainer should have remained in respondent's trust account. In fact, only $339.92 was in the trust account.

{20} In the second matter discussed herein, respondent alleged that she earned $823.41 in the child custody case before she was terminated. Therefore, $764.03 should have been maintained in respondent's trust account from July 1997 to August 25, 2000. The monies in respondent's trust account were less than $764.03 on five separate occasions according to respondent's bank statements.

{21} By virtue of her inadequate trust accounting, respondent violated Rule 16–115(A), by failing to hold her client's property separately, converting client funds and/or failing to keep records pursuant to Rule 17–204. Respondent also violated Rule 16–804(H), by engaging in conduct that adversely reflects on her fitness to practice law.

{22} "[O]ne of the basic foundations of the practice of law [is] that an attorney can be trusted to act with integrity and competence regarding their clients' monies." *In re Chavez*, 1996–NMSC–059, 122 N.M. at 506, 927 P.2d at 1044. This Court has stated numerous times that mismanagement of client funds is one of the most serious violations of an attorney's ethical obligations. *See, e.g., In re Greenfield*, 1996–NMSC–015, 121 N.M. 633, 916 P.2d 833; *In re Gabriel*, 110 N.M. 691, 799 P.2d 127 (1990); *In re Archuleta*, 1996–NMSC–039, 122 N.M. 52, 920 P.2d 517; *In re Turpen*, 119 N.M. 227, 889 P.2d 835 (1995). This case is no exception and respondent's trust accounting violations warrant her removal from the practice of law.

### V. Imposition of Discipline

{23} Numerous aggravating factors existed in this case to warrant respondent's suspension. Respondent had prior disciplinary offenses, displayed a selfish motive regarding the billing of her clients, displayed a pattern of misconduct, and had substantial experience in the practice of law as she had been a licensed New Mexico attorney since 1979. *See ABA Standards for Imposing Lawyer Sanctions*, § 9.2 (1991 as amended 1992) (definition and list of aggravating factors). A mitigating factor was the testimony of not only many respected New Mexico attorneys but also her client in the child custody case who thought of respondent as a quality person and attorney. There is

no question that in respondent's legal career she has served many clients well and been an active and productive member of the New Mexico bar. This past reputation, however, does not overcome the current state of respondent's career, which displays a need for a period of re-evaluation. *See ABA Standards for Imposing Lawyer Sanctions,* § 9.3 (1991 as amended 1992) (definition and list of factors in mitigation).

{24} Respondent's remorse and the testimony regarding her character cannot overcome the fact that she evidenced a blatant disregard not only for her clients but also for the ethical mandates to all attorneys. Therefore, this Court accepts the recommendation of the disciplinary board that the conditional agreement not to contest and consent to discipline be accepted.

{25} Now, therefore, it is ordered that the recommendation hereby is adopted and the conditional agreement not to contest and consent to discipline hereby is approved;

{26} It is further ordered that Rondolyn R. O'Brien hereby is indefinitely suspended from the practice of law pursuant to Rule 17–206(A)(3) for a minimum period of at least two years;

{27} It is further ordered that, prior to seeking reinstatement pursuant to Rule 17–214(B)(2), respondent shall satisfy the following terms and conditions;

(1) Respondent shall observe all Rules of Professional Conduct and Rules Governing Discipline;

(2) Respondent shall make restitution to the client in the estate matter in the amount of $4,746.84 on or before July 24, 2001. Any unpaid amount as of July 24, 2001, shall accrue interest at a rate of eight percent (8%) per annum. Said restitution shall be reduced to a transcript of judgment;

(3) Respondent shall provide an accounting to the client in the child custody matter on or before July 24, 2001, and if monies are owed to respondent, the client shall timely make payment. Respondent has refunded this client his full retainer in the amount of $1,587.44;

(4) Respondent shall continue to take fifteen hours of continuing legal education per year during the period of suspension and shall provide proof of attendance to the office of disciplinary counsel;

(5) Respondent shall comply with the mandates of Rule 17–212 and provide proof of same to the office of disciplinary counsel; and

(6) Respondent shall pay the costs of this matter in the amount of $610.59 on or before July 24, 2001. Any unpaid amount as of July 24, 2001, shall accrue interest at a rate of eight percent (8%) per annum. Unpaid costs shall be reduced to a transcript of judgment.

{28} It is further ordered that, sixty days prior to seeking reinstatement pursuant to Rule 17–214(B)(2), respondent shall submit a report of a licensed psychologist or therapist approved by the office of disciplinary counsel regarding her mental state in relation to the practice of law. Respondent shall provide the office of disciplinary counsel with a release to discuss the report with the psychologist or therapist;

{29} It is further ordered, that, sixty days prior to seeking reinstatement pursuant to Rule 17–214(B)(2), respondent shall submit a report of a physician approved by the office of disciplinary counsel regarding her health. Respondent shall provide the office of disciplinary counsel with a release to discuss the report with the physician;

{30} It is further ordered that, if reinstated to the practice of law, respondent shall be placed on probation for a period of two years under the following terms and conditions:

(1) Respondent shall observe all Rules of Professional Conduct and Rules Governing Discipline during the probationary period;

(2) During the first twelve months of probation, respondent shall be supervised by an attorney appointed by the office of disciplinary counsel and shall meet at least monthly with the supervising attorney, and at other times the supervising attorney so requires, to obtain instruction in maintaining adequate communication with her clients and the office of disciplinary counsel, and trust account management;

(3) Respondent shall allow the supervising attorney full access to her law office management and trust account systems. Respondent shall provide a monthly list of all open case files, detailing what actions have been taken on each case during that month and a copy of her quarterly trust account reconciliation report;

(4) Respondent shall follow the directions and advice of the supervising attorney regarding communication with clients and the office of disciplinary counsel, and trust account management;

(5) Respondent shall pay the supervising attorney at an hourly rate, plus gross receipts tax, agreed upon by respondent and the supervising attorney;

(6) The supervising attorney shall advise the office of disciplinary counsel on a quarterly basis as to whether respondent has met with him or her as required; and

(7) At her expense, respondent shall submit to an examination of her trust account by a certified public accountant approved by the office of disciplinary counsel. The accountant shall provide the office of disciplinary counsel a copy of the examination report.

{31} It is further ordered that during the second year of probation, respondent shall be placed on unsupervised probation pursuant to Rule 17–206(B) and shall comply with the following condition:

At her expense, respondent shall submit to a second examination of her trust account by a certified public accountant approved by the office of disciplinary counsel. The examination shall be randomly ordered by the office of disciplinary counsel. The accountant shall provide to the office of disciplinary counsel a copy of the examination report.

{32} It is further ordered that revocation of the probationary period shall be sought if any complaints are filed alleging that respondent has engaged in additional acts of incompetence, lack of diligence, failure to communicate or trust account violations that are found by office of disciplinary counsel to have sufficient merit to justify filing formal charges against respondent. Additional formal charges shall be filed and a verified motion to show cause shall be filed with this Court pursuant to Rule 17–206(G) to seek revocation of the probation; and

{33} It is further ordered that respondent shall be automatically reinstated to non-probationary active status should she successfully complete the terms and conditions of probation.

{34} It is so ordered.